JOHN HEITING, Appellee, *vs.* THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Appellant.

*Opinion filed December 21, 1911.*

1. RAILROADS—*a city may pass ordinance requiring fences for protection of persons.* If clause 26 of section 1 of article 5 of the Cities and Villages act were the only authority for the passage by a city of an ordinance requiring railroad companies to fence their tracks such an ordinance would have to be construed as applying only to fences for the purpose of turning stock, as the liability imposed by such clause is the same as that existing under the general laws of the State; but clause 27 of the same section supplements clause 26 and authorizes an ordinance requiring a fence as a protection to persons.

2. SAME—*when an ordinance requiring fences is intended for the protection of persons.* An ordinance containing in one section provisions with reference to lighting tracks, the speed of trains, the erection, maintenance and operation of gates, bells and safety appliances as well as substantial walls or fences, but containing no provisions as to cattle-guards, cannot be construed as merely requiring walls or fences to keep stock from getting on the track, but must be construed as requiring them for the protection of persons as well as property.

3. NEGLIGENCE—*when neglect to maintain fences is proximate cause of accident.* If it can reasonably be concluded from the evidence that the accident would not probably have happened except for the failure of a railroad company to fence its tracks, it follows that the neglect to fence is the proximate cause of the accident, unless some other disconnected cause, which could not have been foreseen by the exercise of ordinary care, has intervened.

4. SAME—*when question of proximate cause is for the jury.* If the facts and circumstances proven are such that men of ordinary judgment might reasonably arrive at different conclusions as to whether the presence of the fence which the defendant railroad company was required by ordinance to erect would have prevented

the injury to the plaintiff, who was a boy ten years and eight months old, the question is one which must be submitted to the jury; and the age of the boy is one of the circumstances to be considered by the jury in determining that question.

5. SAME—*what not essential to render negligent act the proximate cause of injury.* To render a negligent act the proximate cause of an injury it is not essential that the particular injurious consequences and the precise manner of their infliction be such as could have reasonably been foreseen, and it is sufficient if the consequences follow in unbroken sequence, without any intervening cause, if at the time of the negligence the wrongdoer might by the exercise of ordinary care have foreseen that some injury might result from his act.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

M. L. BELL, for appellant.

JAMES C. MCSHANE, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The circuit court of Cook county rendered a judgment against the appellant in an action on the case for personal injuries. The Appellate Court affirmed the judgment and granted a certificate of importance and appeal to this court.

The appellant offered no evidence on the trial but asked the court to instruct the jury to return a verdict in its favor. The refusal of this instruction is the error relied upon for reversal.

The place where the injury to the appellee occurred was in the city of Chicago, and the negligence charged in several counts of the declaration was the failure of the appellant to maintain fences on the sides of its railroad in accordance with the terms of the city ordinances, of which several were pleaded in different counts of the declaration. No question arises out of the difference in the ordinances,

and they will be treated as if all the provisions of the various ordinances were parts of the same ordinance.

The appellant's railroad extended south and south-west from the center of the city to the southern limits, and at the place where the appellee was injured there were four tracks. The road-bed was three or four feet above the level of the ground. The two inside tracks were passenger tracks, and were a foot and a half or two feet higher than the outside tracks. On each side of the right of way was a ditch four or five feet wide, outside of which, on either side of the right of way, was a fence, consisting of posts with four or five strands of barbed wire. The plaintiff was a boy ten years and eight months old at the time of the accident and lived with his parents at the corner of Ninety-sixth and Peoria streets, five or six blocks east of the railroad. He attended school at the corner of Ninety-ninth and Throop streets, one block west of the railroad. Ninety-fifth street north and Ninety-seventh street south of Ninety-sixth street were opened and planked across the railroad. Ninety-sixth street was not open across the right of way, but where the end of the street abutted on the right of way the fence was torn down, and there was evidence tending to show that the wire and at least two of the posts were gone. On the day of his injury the plaintiff attended school in the forenoon and went home to lunch at noon. With several other boys he started from his home at about a quarter of one to go back to school. They went west on Ninety-sixth street, intending to cross the railroad and go through an opening which was in the fence on the west side, out upon Vincennes road, which is there adjacent to and parallel with the railroad, then to go south on Vincennes road to Ninety-ninth street and thence west to the school house. Just as the boys got upon the railroad the school bell rang, and at the same time a long freight train was coming from the north on the west track. Seeing that they could not cross in front of the train they began to

run south along the track, with the intention of reaching the Ninety-seventh street crossing before the train. The plaintiff was running along the west end of the ties on the west passenger track, when he stepped on some of the coarse gravel with which the track was ballasted and fell. He rolled down under the train and his foot was run over and had to be amputated.

The ordinances introduced in evidence over the appellant's objection required the railroad company to construct on each side of its tracks, and in such place with reference thereto as the city council should direct, except where public streets should intersect or cross the same, substantial walls or fences of such material, design, proportion and height as should be determined and approved by the mayor and commissioner of public works, and to erect and maintain gates and signal bells and other safety appliances, operated from towers or by other reliable means satisfactory to the mayor and commissioner of public works, for the purpose of giving due and timely warning of the approach of trains. The speed of trains was limited to a low rate until the walls or fences required by the ordinances should be erected, but the mayor and commissioner of public works were authorized to issue a permit to any railroad company to operate its trains at higher rates of speed than allowed by the ordinances whenever they were satisfied that such company was proceeding as rapidly as practicable to construct the walls, fences, etc., as required by the ordinances. The appellant applied for and obtained such a permit, and for many years before the accident availed itself of the right granted to railroad companies which had constructed the walls, fences, etc., required by the ordinances, to operate its trains at the higher rate of speed.

Two propositions are contended for by the appellant: that the ordinance requiring fences was not intended for the protection of persons, and that the defect in the fence

was not the proximate cause of the plaintiff's injuries. The validity of the ordinance is not questioned.

Paragraph 26 of section 1 of article 5 of the Cities and Villages act authorizes the city council to require railroad companies to fence their tracks and to construct cattle-guards and street crossings within the corporate limits, and for a failure to comply with any such ordinance imposes upon them the same liability for all damages the owner of cattle, horses or other domestic animals may sustain by reason of injuries thereto while on the railroad track as is imposed under the general laws of the State in relation to the fencing of railroads. Paragraph 27 authorizes the council to require railroad companies to put flagmen at railroad crossings of streets, and provide protection against injury to persons and property in the use of such railroads. We recently held that the general laws of the State relative to the fencing of railroads did not impose upon a railroad company any liability for the death of a child going upon the track from an adjacent parallel highway by reason of the railroad company's failure to erect and maintain fences suitable and sufficient to prevent stock from getting on its railroad, as required by section 1 of the act in relation to fencing and operating railroads. (*Bischof* v. *Illinois Southern Railway Co.* 232 Ill. 446.) Since the liability imposed by paragraph 26 cited above is the same as that existing under the general laws of the State, the ordinance must be held not to have been intended for the protection of persons, if the only authority for its passage is to be found in that paragraph. Paragraph 27, however, also deals with the power of the city council with reference to railroads, and supplements the provision authorizing it to require railroad companies to fence against stock by authorizing it also to provide protection against injury to persons and property in the use of railroads. The provisions of the ordinance for the construction of walls or fences were such as would tend to security against injury

to persons as well as to property, and if paragraph 26 were not in the statute the power to pass the ordinance would be amply conferred by paragraph 27. The ordinance contains no requirement for the construction of cattle-guards, which would be necessary if the prevention of stock getting on the railroad were the purpose, but it does contain provisions in reference to lighting the track, the speed of trains, the erection, maintenance and operation of gates, bells and other safety appliances, all of which are designed for the protection of persons and not to keep stock off the track. These provisions are all contained in a single section, and it requires too great an effort of the imagination to believe either that all these provisions were intended to keep stock off the track and not to apply to persons, or that the requirements in regard to fences applied to stock only and the other requirements to persons. In the *Bischof case* we said that the question must be determined by what the legislature has said, and the legislature having fixed as the standard the erection and maintenance of a fence suitable and sufficient to prevent cattle, horses, sheep, hogs or other stock from getting on the railroad, there was manifestly no requirement for a fence which would keep children off. That standard does not apply to an ordinance clearly intended in many of its provisions for the protection of persons against injury from the operation of railroads in the city. In our judgment the requirement of fences, as well as the other provisions of the ordinance, was for the protection of persons as well as property.

In accordance with the views which we have expressed in regard to the ordinance the negligence of the defendant must be assumed, and, the facts being undisputed, the sole remaining question is whether there is any reasonable ground for saying that the failure to fence was the proximate cause of the plaintiff's injury. If it can reasonably be concluded from the evidence that the accident would not probably have happened except for the failure of the ap-

pellant to fence its track, then it follows that the neglect to fence was the proximate cause of the accident, unless some other disconnected efficient cause which could not have been foreseen by the exercise of ordinary care has intervened. In the similar case of *Hayes* v. *Michigan Central Railroad Co.* 111 U. S. 228, the court, in discussing the very question now under consideration, said: "It is further argued that the direction of the court below was right because the want of a fence could not reasonably be alleged as the cause of the injury. In the sense of an efficient cause, *causa causans,* this is no doubt strictly true; but that is not the sense in which the law uses the term in this connection. The question is, was it *causa sine qua non?*— a cause which, if it had not existed, the injury would not have taken place,—an occasional cause? And that is a question of fact, unless the causal connection is evidently not proximate. (*Milwaukee and St. Paul Railroad Co.* v. *Kellogg,* 94 U. S. 469.) The rule laid down by Willes, J., in *Daniel* v. *Metropolitan Railroad Co.* L. R. 3 C. P. 216-222, and approved by the Exchequer Chamber (L. R. 3 C. P. 591,) and by the House of Lords, (L. R. 5 H. L. 45,) was this: 'It is necessary for the plaintiff to establish, by evidence, circumstances from which it may fairly be inferred that there is reasonable probability that the accident resulted from the want of some precaution which the defendants might and ought to have resorted to.' And in the case of *Williams* v. *Great Western Railroad Co.* L. R. 9 Exch. 157, where that rule was applied to a case similar to the present, it was said (p. 162): 'There are many supposable circumstances under which the accident may have happened and which would connect the accident with the neglect. If the child was merely wandering about and he had met with a stile he would probably have been turned back; and one, at least, of the objects for which a gate or stile is required is to warn people of what is before them and to make them pause before reaching a dan-

gerous place like a railroad.'   The evidence of the circumstances showing negligence on the part of the defendant, which may have been the legal cause of the injury to the plaintiff, according to the rule established in *Railroad Co.* v. *Stout,* 17 Wall. 657, and *Randall* v. *Baltimore and Ohio Railroad Co.* 109 U. S. 478, should have been submitted to the jury."

In the following cases, in each of which a recovery was sought for the injury or death of a child who went upon a railroad track not fenced as required by law, it was held to be a question of fact, to be determined by the jury according to the facts and circumstances shown by the evidence, whether a fence constructed as required by law would have prevented the children from going upon the tracks: *Keyser* v. *Chicago and Grand Trunk Railway Co.* 56 Mich. 559; *Ross* v. *St. Paul and Duluth Railway Co.* 68 Minn. 216; *Ellington* v. *Great Northern Railway Co.* 96 id. 176; *Mattes* v. *Great Northern Railway Co.* 95 id. 386.   In all these cases the child injured was younger than the appellee here at the time of his injury; but in *Baltimore and Potomac Railroad Co.* v. *Cumberland,* 176 U. S. 232, the case was held to have been properly submitted to the jury although the boy injured was nearly two years older than this appellee.   The age of the child injured is, of course, one of the circumstances to be considered by the jury in determining the question of proximate cause.   The question of contributory negligence, as expressly stated by counsel for the appellant, is not raised, except as bearing upon the question of proximate cause.

The case of *Fezler* v. *Willmar and Sioux Falls Railway Co.* 85 Minn. 252, is strongly relied upon by counsel for the appellant as controlling this case.   In that case the court, after a consideration of the facts shown by the evidence, arrived at the conclusion that the absence of the fence was not the proximate cause of the injury.   No two causes are precisely alike.   In cases involving quite similar

facts different courts have arrived at opposite conclusions. The question for our determination is whether there was any evidence requiring the submission of the question of proximate cause to a jury, and if the facts are such that men of ordinary judgment may arrive at different conclusions as to whether or not a fence would probably have prevented the accident, then the condition was such as required the submission of the case to the jury.

It is insisted that the proximate cause of the accident was the appellee's selection of the ends of the ties next the moving train as a place to run. It is true that this was the voluntary act of the appellee, but it was not an independent intervening cause which the appellant could not have anticipated. On the contrary, if the appellant was negligent in failing to fence its track as required by the ordinance, and by such negligence suffered children to come upon its tracks, it might by the exercise of reasonable diligence have anticipated that precisely such an accident would happen as did happen. It is not, however, essential to make a negligent act the proximate cause of an injury that the particular injurious consequences and the precise manner of their infliction could reasonably have been foreseen. If the consequences follow in unbroken sequence from the wrong to the injury, without any intervening efficient cause, it is sufficient if at the time of the negligence the wrong-doer might by the exercise of ordinary care have foreseen that some injury might result from the negligence. *Illinois Central Railroad Co.* v. *Siler,* 229 Ill. 390; *Ford* v. *Hine Bros. Co.* 237 id. 463.

In our judgment the facts were such as to require the case to be submitted to the jury, and the motion to direct the verdict was properly denied.        *Judgment affirmed.*