COLLINS v. PECOS & N. T. RY. CO.
(No. 64–2807.)

(Commission of Appeals of Texas, Section B.
May 28, 1919.)

1. MASTER AND SERVANT ⬤➤85—ANTICIPA-
TION OF INJURY TO SERVANT.

Where there is reason to anticipate some in-
jury may result to the servant, the master must
exercise such care as will prevent the injury,
and a failure to do so is actionable negligence,
if injury follows the breach of duty.

2. NEGLIGENCE ⬤➤1—ELEMENTS.

Negligence rests primarily upon two ele-
ments: First, reason to anticipate injury; and,
second, failure to perform the duty arising on
account of that anticipation, but to render neg-
ligence actionable it must be incorporated into
some injury.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Negli-
gence.]

3. NEGLIGENCE ⬤➤59—"PROXIMATE CAUSE"—
"PROBABLE CONSEQUENCES."

"Proximate cause" incorporates in it such
anticipation of result as ought, from the cir-
cumstances, to have been foreseen as natural
consequences of a negligent act; and if a negli-
gent act produces an injury, and more serious
injury naturally flows from the negligence, with-
out any intervening independent cause, those
consequences are probable and ought to be fore-
seen, and are chargeable to the negligence.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Proba-
ble Consequence; Proximate Cause.]

4. MASTER AND SERVANT ⬤➤285(12)—INJURY
TO SERVANT—PROXIMATE CAUSE—QUESTION
FOR JURY.

In action by section foreman for injury to
his hands and face from handling ties wet with
a poisonous mixture known as creosote, wheth-
er the permanent injuries suffered were the nat-
ural and proximate result of defendant's neg-
ligence in not warning him of danger, held, on
the evidence, a question for the jury.

5. MASTER AND SERVANT ⬤➤276(2)—PERMA-
NENT INJURY — PROXIMATE CAUSE — SUFFI-
CIENCY OF EVIDENCE.

Evidence held to show that permanent in-
jury to a section foreman, poisoned by handling
creosoted ties, was the proximate result of neg-
ligence in failing to warn him of the danger.

Error to Court of Civil Appeals of Seventh
Supreme Judicial District.

Action by Robert Collins against the Pecos
& Northern Texas Railway Company. Judg-
ment for plaintiff, and defendant appeals,
and from a judgment of the Court of Civil
Appeals of Amarillo (173 S. W. 250), revers-
ing and remanding, plaintiff brings error.
Reversed, and judgment of trial court af-
firmed.

J. Marvin Jones, L. C. Barrett, and Jas. N.
Browning, all of Amarillo, for plaintiff in er-
ror.

Terry, Cavin & Mills, of Galveston, Mad-
den, Trulove & Kimbrough, of Amarillo, and
Carl Gilliland, of Hereford, for defendant
in error.

SADLER, J. This suit was filed in the dis-
trict court of Parmer county by Robert Col-
lins, to recover damages from the Pecos &
Northern Texas Railway Company, for in-
juries alleged to have been caused by negli-
gent poisoning while he was acting for the
defendant as section foreman in unloading
railroad ties recently treated with a mixture
known as "creosote." The negligence is
charged to have been the failure of defendant
to warn him of the danger of poisoning re-
sulting from contact with the solution.

The findings of the jury, and there is evi-
dence to support same, sustain the allega-
tions that about the 27th of May, 1912, plain-
tiff was working on the line of defendant's
road, in charge of a section gang, unloading
and placing ties which had recently been
treated with a creosote solution for pres-
ervation; that these ties were wet with the
solution, and that it got on the hands and
face of plaintiff, causing injury; that he had
theretofore handled creosote ties and tim-
bers on which the solution had dried, but
had no experience in handling wet timbers,
and did not know that creosote, when wet,
would produce injury to his hands and face
by coming in contact therewith; that he did
not know the properties of the solution, or
that it was poisonous; that defendant did
know, or by reasonable diligence could have
known, that the solution used by it, when
coming in contact with the skin before it
had dried, would cause injury thereto, and
would poison the flesh; that the defendant
did not warn plaintiff of the dangers of
poisoning or injury which were incident to
handling wet creosote solution with his
hands, and permitting it to come in contact
with his face and hands; that plaintiff was
permanently injured as a proximate result
of the poisoned condition produced by the
solution; and that this injury was the prox-
imate result of the negligence of the defend-
ant.

The honorable Court of Civil Appeals finds
that the facts are sufficient to support the
conclusion of the jury, except, as it says:

"Assuming that creosote is a poison, and so
recognized by the chemists or the medical world,
but, as noted by them, all known effects of such
poison when applied to the skin is a burning
sensation compared to a sunburn, and never
known to the profession or treated by stand-
ard authorities as producing constitutional dis-
orders, or systemic poisoning, whether an em-
ployer would be charged with negligence in

failing to warn of such danger, when it did not know and could not know that a constitutional disorder would result from such a use—in other words, was such an injury incidental to the wrong done, and was it such as may have reasonably been supposed to have entered into the contemplation of the appellant? * * * The fact that appellee's condition is a serious one, it will not necessarily follow that the hands burned by creosote produced it, though the opinion of the two doctors may have warranted the jury in finding as a fact it did. The evidence is lacking to show that such injury could or would reasonably have been anticipated, and that appellant did know or should have known thereof, and therefore, in order to prevent it, have warned appellee of such danger."

For a more extended statement of the pleadings, evidence, and discussion of the Court of Civil Appeals, see 173 S. W. 250.

### Opinion.

Plaintiff in error complains of the holding by the Court of Civil Appeals that defendant in error was not liable for the constitutional and permanent injuries sustained by him, because it did not, and could not, anticipate that the failure to warn him would naturally result in the permanent injuries to the extent shown by the evidence. He also complains of the holding that the evidence was not sufficient to show that defendant in error had notice, or by the exercise of ordinary care would have known, of the extent of the injury produced by the poisoning of the creosote ties.

As we interpret the opinion of the Court of Civil Appeals, it holds that there is no evidence supporting the contention that the negligence of the defendant, as found by the jury, was the proximate cause of the permanent injuries. We further understand the holding to be that, though the permanent injuries may be the natural consequence of the negligence, responsibility therefor cannot be chargeable against the defendant, without showing anticipation of such permanent injuries to exist at the time of the negligence.

We are thus brought face to face with the question of whether or not, when permanent injuries result from negligence, the wrongdoer is chargeable with all the consequences that naturally and proximately flow from such negligence; also with the question as to whether or not there is any evidence to support the finding of the jury that the permanent injuries to plaintiff were the natural and proximate result of defendant's negligence.

[1, 2] We believe that the correct rule for determining negligence is that where there is reason to anticipate, from the character of the services required and the manner of their performance, some injury may result to the servant, the duty is incumbent to exercise such care demanded by the relationship as will prevent the injury, and the failure so to do becomes actionable in the event injury follows the breach of duty. We are not willing to subscribe to the rule that requires the master to anticipate all ensuing results which flow from the breach, before duty arises to exercise care to prevent the consequences. Anticipation is applied in the determination of negligence vel non. If no injury may be anticipated, no duty is breached by a failure to exercise care; but, if anticipated injury may result, then the duty arises. Negligence rests primarily upon two elements : First, reason to anticipate injury; and, second, failure to perform the duty arising on account of that anticipation. Negligence may exist abstractly; but, to render it actionable, it must be concretely incorporated into some injury.

In the Kieff Case, 94 Tex. 334, 60 S. W. 543, Chief Justice Gaines says:

"The negligence which results in actionable wrong is the failure to discharge a duty owed to the party injured. It is a duty incumbent upon all men to use ordinary care so to act as not to injure others. The duty arises when there is reason to anticipate danger."

See Ebersole v. Sapp, 208 S. W. 156.

In Heiting v. Railway Co., 252 Ill. 466, 96 N. E. 842, Ann. Cas. 1912D, 451, it is held that:

"It is not, however, essential to make a negligent act the proximate cause of an injury that the particular injurious consequences and the precise manner of their infliction could reasonably have been foreseen. If the consequences follow in unbroken sequence from the wrong to the injury without any intervening efficient cause, it is sufficient that if at the time of the negligence the wrongdoer might by the exercise of ordinary care have foreseen that some injury might result from the negligence."

[3] Anticipation of injury as applied in the determination of negligence and proximate cause should not be confused. The former is an element of negligence, while the latter is used to denote the relative position of cause to effect in ascertaining whether cause is so related to effect as to bring negligence in union with the result rendering liable a negligent actor for certain consequences. Whether a result can be chargeable to a certain dominant cause is determined by ascertaining whether the result flows naturally, without lapse, from the cause, although there may be intervening ancillary or subsidiary causes which contribute to the injury. Proximate cause incorporates in it such anticipation of results as ought, from the circumstances, to have been foreseen as the natural consequences flowing from a negligent act.

In Railway Co. v. Leslie, 57 Tex. 83, our Supreme Court says:

"The liability of the defendant is measured by the fact that the injury received follows

proximately from the culpable act complained of, and if erysipelas sprang from the injury, the dangers from that disease, as well as the sufferings produced by it, constitute a portion of the injury itself, and it is none the less so because, under similar accidents producing fractures, that disease would not ordinarily ensue."

Judge Brown, in Railway Co. v. Powers, 101 Tex. 161, 105 S. W. 491, says:

"The railroad company, being liable for the infliction of the injury on the party, would be liable for all the consequences flowing from that injury, including such as a jury might say from the evidence presented to them would with reasonable probability occur at some future time."

In Railway Co. v. Smith, 148 S. W. 820, it is said that:

"It is not necessary that the precise injury should have been anticipated, but that some injury might follow from the act of negligence. 'The injuries, proximate and natural consequences of an act of negligence, are always deemed to be foreseen.'"

Where some injury has resulted, chargeable to negligence, later followed by serious consequences, to ascertain whether these consequences proximately flow from the negligence, it is always necessary to look back down the line for causation; and if the consequences naturally flow from the negligence, without the intervention of any independent cause, such consequences ought to have been foreseen, and are chargeable to the original negligent act. Or, on the other hand, if the negligent act produces an injury, and looking down the line to the future it can be ascertained that other and more serious injuries will naturally flow from the negligence, without any intervening independent cause, these consequences are probable, and ought to be foreseen, and are chargeable to the negligence. We cite further on this question the Bellar Case, 51 Tex. Civ. App. 154, 112 S. W. 323; the Peterson Case, 28 Tex. Civ. App. 194, 67 S. W. 133; Billman v. Railway Co., 76 Ind. 166, 40 Am. Rep. 230; Cowan v. Telegraph Co., 122 Iowa, 379, 98 N. W. 281, 64 L. R. A. 545, 101 Am. St. Rep. 268; Sorenson v. Railway Co. (C. C.) 36 Fed. 166; Buck, Administrator, v. Railway Co., 96 Ind. 346, 49 Am. Rep. 168.

The defendant in error relies upon the Bigham Case, 90 Tex. 223, 38 S. W. 162, and the Welch Case, 100 Tex. 118, 94 S. W. 333, as sustaining its proposition that plaintiff can have no recovery for the permanent injuries sustained, because they could not be foreseen.

It is believed that, when properly understood, the Bigham Case is in consonance with the position which we take. In that case it is held, as we interpret it, that the railway company was not liable for the injuries to Bigham, because, in the negligent act, anticipation of injury to a person did not exist. The court in that case held that Bigham's injury was chargeable to an independent cause, which independent cause was not in anticipation of defendant. As we understand the application of the rule there announced, it is that where an independent cause follows a negligent act, in order to connect the subsequent result with the original cause, such independent cause producing the result should have been anticipated by the original wrongdoer. We do not understand that case as militating against the doctrine that where anticipation of injury arises, or is chargeable to an actor, he will be responsible for all of the consequences which naturally and proximately flow from that wrong. The court in that case, in our opinion, uses "anticipation" or "foresee," not as applying to the injury sustained by Bigham as such, but as applicable to the intervening independent cause producing that injury; that is, since the cause producing the injury is an independent one, the result of that cause is independent of the original negligence, and does not arise proximately from it. The same may be said with reference to the holding in the Welch Case. The view here given with reference to the Bigham Case is believed to be sustained by reference to the Kellogg Case, 94 U. S. 469, 24 L. Ed. 259, cited in support of the holding in the Bigham Case, wherein it is said:

"The question always is: Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous 'succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

[4] Whether or not the permanent injuries suffered by plaintiff were the natural and proximate result of defendant's original negligence was a question of fact to be determined by the jury. Powers Case, supra; City of Galveston v. Posnainsky, 62 Tex. 118, 50 Am. Rep. 517; Seckinger v. Mfg. Co., 129 Mo. 590, 31 S. W. 957; Wieting v. Town of Millston, 77 Wis. 523, 46 N. W. 879; Railway v. Kemp, 61 Md. 619, 48 Am. Rep. 134.

[5] In the instant case, defendant's negligence caused anticipated injury. The testimony is conflicting as to whether the permanent injuries flowed from that negligence naturally and were the proximate consequences of same. There is evidence in the record requiring the submission of this question to the jury, and upon which it was

authorized to find that issue for the plaintiff.

In view of the disposition to be recommended in this case, we have considered the other assignments of error presented by appellant, and find therein no error calling for a reversal of the judgment of the lower court. The paragraph of the court's main charge to which exception is leveled is cured by the special charges given at the request of the defendant.

We are therefore of the opinion that the judgment of the Court of Civil Appeals should be reversed, and the judgment of the trial court affirmed.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.