(No. 16142.—Reversed and remanded.)
THE NORTHERN TRUST COMPANY, Admr., Appellee, *vs.*
THE CHICAGO RAILWAYS COMPANY, Appellant.

*Opinion filed October 28, 1925.*

1. CONSTITUTIONAL LAW—*when section 120 of Practice act applies—validity.* Section 120 of the Practice act, authorizing the Appellate Court, in reversing a judgment in an action at law without remanding the cause, to make a finding of facts which shall be conclusive, applies only where a jury is waived or where the trial court would have been justified in directing a verdict because there is no evidence tending to establish a cause of action, and so applied the statute is valid. (*Mirich* v. *Forschner Contracting Co.* 312 Ill. 343, explained.)

2. SAME—*right to jury trial does not include right to review of facts in Supreme Court.* The constitutional right of trial by jury does not include the right to have a review of the facts by the Supreme Court, and section 122 of the Practice act, providing that said court shall re-examine, as to questions of law, only, cases coming through the Appellate Court, is not unconstitutional.

3. NEGLIGENCE—*when question of contributory negligence is not open in Supreme Court.* Whether an injured person is guilty of contributory negligence is a question of fact under all the circumstances of the case, and where the evidence on the question is controverted and the jury's verdict is approved by the trial court and that court's judgment is affirmed by the Appellate Court, the question is not open to consideration in the Supreme Court.

4. SAME—*when instruction directing verdict under any count is erroneous.* The giving of a peremptory instruction authorizing a recovery if the jury find the defendant guilty of negligence as charged in the declaration or some count thereof is erroneous where there is one count in which the facts alleged create no liability on the defendant's part.

5. PUBLIC UTILITIES—*the Public Utilities act takes from cities the power to regulate operation of street railways—evidence.* The Public Utilities act of 1913 is complete in itself and covers the whole subject of public utility regulation, and by said statute the General Assembly has recalled from cities and villages the power heretofore exercised by them to require street cars operated in the public streets to be equipped with headlights, and in an action for negligence an ordinance passed after said statute took effect is void and should not be admitted in evidence.

6. SAME—*legislature may determine matters necessary to protect and promote public interests.*  The legislature necessarily has a wide discretion in determining what the public interests require and what measures are necessary for the protection and promotion of those interests.

7. STATUTES—*when a new statute controls entire legislation on subject.*  Where the General Assembly enacts a new statute upon a certain subject and it appears from the act that it is the legislative intention to make a revision of the whole subject and to frame a new plan or scheme in relation thereto, there is, in effect, a legislative declaration that whatever is embraced in the new statute shall prevail and whatever is excluded is discarded, the new law being substituted for the old.

8. MUNICIPAL CORPORATIONS—*city cannot enforce an ordinance which it has lost power to pass.*  A municipality cannot be said to possess power to enforce an ordinance concerning a subject upon which it has lost the power to pass the ordinance, and any attempt to enforce it in such a situation would be defeated by interposing the act withdrawing the municipality's power to enact.

FARMER and DUNCAN, JJ., dissenting.

APPEAL from the Third Division of the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

BROWN, FOX & BLUMBERG, (JOHN R. GUILLIAMS, CHARLES LEROY BROWN, JOSEPH D. RYAN, and FRANK L. KRIETE, of counsel,) for appellant.

FYFFE & CLARKE, and EARL J. SMITH, (COLIN C. H. FYFFE, of counsel,) for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The Northern Trust Company, as administrator of the estate of George McElroy, deceased, brought an action of trespass on the case against the Chicago Railways Company to recover damages resulting from the death of McElroy,

which, it is claimed, was caused by the negligent operation of one of the defendant's street cars. The declaration consisted of five counts, of which the first charged general negligence in the operation of the car; the second, operation of the car at a high and dangerous rate of speed; the third, operation of the car without ringing a bell or sounding a warning; the fourth, operation of the car without a brightly. lighted headlight, in violation of an ordinance of the city of Chicago; and fifth, operation of the car without a sufficient headlight. On the second day of the trial, more than a year after the accident, pursuant to leave granted, the plaintiff amended the fourth count by substituting for the provisions of the ordinance originally declared upon, the provisions of an amended ordinance requiring a brightly lighted headlight, passed on December 28, 1914. The defendant filed a plea of the Statute of Limitations to the fourth count as amended. A demurrer to that plea was sustained. An order was then entered that the plea of the general issue filed to the original declaration stand as the defendant's plea to the fourth count as amended. A verdict for $5000 in favor of the plaintiff followed, upon which, after motions for a new trial and in arrest of judgment had been denied, judgment was entered. On an appeal to the Appellate Court for the First District the judgment of the circuit court was affirmed. By a further appeal upon a certificate of importance the record is now here for review.

Appellant, the Chicago Railways Company, operates a double-track street railway on Crawford avenue, between Bryn Mawr avenue on the north and Thirty-first street on the south. Thomas street intersects Crawford avenue at right angles and is about five and one-half miles south of Bryn Mawr avenue. On Sunday evening, June 27, 1920, one of appellant's cars was started south from its northern terminus, and about that time the motorman discovered that the headlight was out of order. It could not be repaired *en route* and the crew intended to obtain another

car at Thirty-first street. Before reaching Thomas street it became dark, and the three rows of electric lamps inside the car, as well as the sign boxes on its front and sides, were lighted. At about 9:45 o'clock, daylight saving time, George McElroy and Lydia McElroy, his wife, while crossing Crawford avenue from the northeast corner of Thomas street, were struck by the car, and as the result of the injuries he then received McElroy died on the following day.

The rate of speed at which the car was moving at the time of the accident is disputed. Several witnesses who appeared on behalf of appellee testified that the car was running from 25 to 35 miles an hour. The motorman fixed the speed at 15 miles an hour but admitted that it might have been somewhat greater. One of appellant's inspectors of equipment testified that the car could attain a maximum speed of 24 miles per hour.

It appears from the evidence offered on behalf of appellee that immediately prior to the accident two women, accompanied by a third with an infant in her arms, crossed from the northwest corner of Crawford avenue and Thomas street to the southwest corner of the same intersection; that the two women, before they entered the roadway, looked to ascertain whether a street car was approaching but discovered none; that McElroy and his wife looked up and down Crawford avenue before they proceeded to cross the street; that the street car bell was not rung nor were the brakes applied until after the accident; that the car ran approximately 150 feet after striking McElroy and his wife and came to a stop about 50 or 60 feet south of Thomas street.

Appellee offered, and there was admitted over appellant's objection, an ordinance passed by the city council of the city of Chicago on December 28, 1914, which amended section 2210 of the Chicago code of 1911 as amended on May 5, 1913. The amended ordinance, among other things, provides that every street car while being operated at night shall be equipped with a brightly lighted headlight.

The motorman, who was called by appellant, testified that when his car approached Thomas street he saw three women walking east in that street; that he slowed down to permit them to cross and rang the bell; that he then noticed McElroy and his wife, who were going west in Thomas street; that when the car was about 50 feet from them they stopped in the north-bound track in Crawford avenue and were looking toward the car; that he thought they were going to permit the car to pass and he applied the power; that when the car was about 10 or 15 feet from them they darted in front of it; that he immediately applied the emergency brake but was unable to stop the car before it struck them, and that the car ran about its length after the collision. Another witness in behalf of appellant testified that when McElroy and his wife were about nine feet from the car they started to cross the track on a "kind of a trot" and were struck, and that the car came to a stop with the rear ten feet in Thomas street. Other testimony is to the effect that Crawford avenue and the intersection in question were well lighted when the accident occurred.

Appellant insists that recovery is barred by the contributory negligence of appellee's intestate, and that it follows from the decision in *Mirich* v. *Forschner Contracting Co.* 312 Ill. 343, that the question is open to review by this court. It was there decided that in an action at law tried by a jury, where the evidence is conflicting and that for the plaintiff unquestionably tends to establish a cause of action, the Appellate Court is not authorized, by section 120 of the Practice act, to reverse a judgment for the plaintiff and make a finding of facts without remandment, for such procedure would be a deprivation of the right of trial by jury guaranteed by the constitution. That section, it was held, applies only to cases where a jury is waived in the trial court or where the trial court is justified in directing a verdict because the evidence does not tend to establish a cause of action. So applied, the statute does not deprive a

party of his constitutional right to a trial by jury. But it was not decided, nor even suggested, in *Mirich* v. *Forschner Contracting Co. supra,* that the right to a review of a trial court's judgment by any particular court was any part of a jury trial. The right of trial by jury constitutionally guaranteed does not include the right to have a review of the facts by this court. *Sinopoli* v. *Chicago Railways Co.* 316 Ill. 609.

Section 122 of the Practice act (Laws of 1909, p. 304,) provides: "The Supreme Court shall re-examine cases brought to it by appeal or writ of *certiorari* as provided in this act, from the Appellate Courts, as to questions of law only; and in the cases aforesaid, no assignment of error shall be allowed calling in question the determination of the inferior or Appellate Courts upon controverted questions of fact therein." This section is consistent with section 2 of article 6 of the constitution of 1870 and is valid. (*Lake Shore and Michigan Southern Railway Co.* v. *Richards,* 152 Ill. 59.) The General Assembly has the power to make the decisions of the Appellate Courts final on questions of fact. (*Illinois Central Railroad Co.* v. *Larson,* 152 Ill. 326; *Sinopoli* v. *Chicago Railways Co. supra.*) Whether an injured person is guilty of contributory negligence is a question of fact under all the circumstances of the case. (*Loftus* v. *Chicago Railways Co.* 293 Ill. 475; *Chicago Union Traction Co.* v. *Jacobson,* 217 id. 404.) In an action to recover damages for personal injuries every controverted question of fact is determined by the judgment of the Appellate Court which affirms the judgment of the trial court, and only questions of law can be considered here. (*Mattice* v. *Klawans,* 312 Ill. 299; *Schubert* v. *Patera,* 310 id. 419.) In the instant case the questions of negligence and contributory negligence were controverted questions of fact. The question whether appellee's intestate was guilty of contributory negligence was properly submitted to the jury. The jury's verdict was approved by the trial court, and that

court's judgment was affirmed by the Appellate Court. Hence the question of contributory negligence is not before this court for consideration or determination.

Appellant further contends that prejudicial error was committed in the admission of the ordinance requiring brightly lighted headlights, because the city's power to enact and enforce such a police regulation was abrogated by the transfer to the Public Utilities Commission of all police regulation of street railways. The original act to provide for the regulation of public utilities was approved on June 30, 1913, and became effective on January 1, 1914. (Laws of 1913, p. 459.) It continued in force until after the death of appellee's intestate, and for that reason it will not be necessary to notice the later Public Utilities act, which superseded the act of 1913 on July 1, 1921. (Laws of 1921, p. 702.)

The first section of the act of 1913 created the Public Utilities Commission, and by the eighth section general supervision of all public utilities was vested in the commission. The ninth section required every public utility to comply with every order, rule or regulation made or prescribed by the commission. The tenth section expressly included street railways within the provisions of the act. Every public utility was required by section 32 to provide and maintain such equipment as shall promote the safety, health, comfort and convenience of its patrons, employees and the public. Section 49 provided that whenever the commission, after a hearing, should find that the equipment of any public utility was unsafe, improper or inadequate, it should determine, and by its order, rule or regulation fix, the safe, proper or adequate equipment to be furnished or employed. Whenever the commission, after a hearing, should find that additions, improvements to or changes in the equipment or apparatus of any public utility ought reasonably to be made to promote the security or convenience of its employees or the public, the commission was authorized by section 50

to direct that such additions, improvements or changes be made.   By section 57 the commission was given power, after a hearing, by general or special orders, rules or regulations, to require every public utility to maintain and operate its equipment in such manner as to promote and safeguard the health and safety of its employees, passengers and the public, and to prescribe the installation, use, maintenance and operation of appropriate safety or other devices or appliances, to establish uniform or other standards of equipment, and to require the performance of any other act which the health or safety of its employees, passengers or the public might demand.   Section 64 authorized any municipal corporation to make complaint to the commission of any act or thing done or omitted to be done in violation of any provision of the act or of any order or rule of the commission. Section 65 provided for hearings, the issuance of process to enforce the attendance of necessary witnesses, the taking of evidence and the entry of orders.   The 68th and 69th sections made provision for appeals from the orders of the commission.   The 76th section subjected any public utility which failed to comply with any provision of the act or any order, rule or regulation of the commission, to a fine of not less than $500 nor more than $2000 for each and every offense.

The act of 1913 expressly provided for hearings by the commission concerning matters relating to public utilities and the making of rules, regulations or orders as the result of such hearings.   Every public utility was required to obey such rules, regulations or orders, and penalties were prescribed for non-compliance.   The commission had the power, after a hearing, to determine safe, proper and adequate equipment and facilities and by its order to require them to be employed.   It was authorized to direct the making of improvements in the existing equipment or facilities of any public utility when reasonably necessary to promote the security of the public.   The commission had the power

to require every public utility to maintain and operate its equipment in such a manner as to promote and safeguard the public safety, to prescribe the installation, use and maintenance of appropriate safety devices or appliances, and to require the performance of any other act which the public safety might demand. The act charged the commission, so far as the operation of a public utility in the streets of a city was concerned, with the duty of protecting and promoting the safety of the public, and vested in the commission plenary power to perform that duty.

Did the Public Utilities act of 1913, which conferred this ample control and supervision over public utilities, including street railroads, deprive municipalities organized under the general Cities and Villages act of the power to pass ordinances requiring street railroads to equip their cars with brightly lighted headlights? If both the commission and the city could exercise the same power at the same time with reference to the same subject matter their requirements in respect of the same utility might be utterly contradictory. In such cases the utility could not obey both the commission and the city council. Yet the Public Utilities act enjoined obedience to the commission's orders and prescribed severe penalties for failures to comply. Obviously, concurrent authority would lead to conflict and confusion. The Public Utilities act covered the whole subject of public utility regulation. It was complete in itself, later in point of time, and evidently was intended by the General Assembly to abrogate the power to require street cars to be equipped with headlights, theretofore exercised by municipalities organized under the general Cities and Villages act. (*Village of Atwood* v. *Cincinnati, Indianapolis and Western Railroad Co.* 316 Ill. 425.) Where the General Assembly enacts a new statute upon a certain subject and it appears from the act that it is the legislative intention to make a revision of the whole subject and to frame a new plan or scheme in relation thereto, there is, in effect, a legislative declaration

that whatever is embraced in the new statute shall prevail and that whatever is excluded therefrom shall be discarded. The revision of the whole subject by the new statute evinces an intention to substitute its provisions for the old law upon the subject. (*Village of Atwood* v. *Cincinnati, Indianapolis and Western Railroad Co. supra; Hoyne* v. *Danisch,* 264 Ill. 467; *People* v. *Freeman,* 242 id. 152; *State Board of Health* v. *Ross,* 191 id. 87; *People* v. *Town of Thornton,* 186 id. 162.) The power to require street cars operated in the public streets to be equipped with headlights, where exercised by cities and villages, did not inhere in such municipalities but emanated from the State. The General Assembly had the right, at any time, to recall that power and either to retain it or to confer it upon some other agency of government. The legislature necessarily has a wide discretion in determining what the public interests require and what measures are necessary for the protection and promotion of those interests. (*Village of Atwood* v. *Cincinnati, Indianapolis and Western Railroad Co. supra; City of Chicago* v. *O'Connell,* 278 Ill. 591; *Durand* v. *Dyson,* 271 id. 382; *Illinois Central Railroad Co.* v. *Willenborg,* 117 id. 203.) The General Assembly, in its discretion, withdrew from cities and villages the power sought to be exercised by the passage of the ordinance of December 28, 1914, and vested it in the Public Utilities Commission, another agency of government, by the original Public Utilities act, effective on the first day of January, 1914. (Laws of 1913, p. 459.) For that reason the ordinance was void and should not have been admitted in evidence.

But it is argued by appellee that the ordinance requiring street cars to be equipped with brightly lighted headlights was passed in 1911, prior to the enactment of the first Public Utilities act, and that the ordinance would not be abrogated until the Public Utilities Commission had taken some action inconsistent therewith. The ordinance of December 28, 1914, was the only one introduced in evidence, and

since it was passed after the Public Utilities act became effective, the ordinance was void for lack of power to enact it. The original fourth count was based upon the ordinance of 1911, but that count, as amended, declared solely upon the ordinance of December 28, 1914. Even assuming that the former ordinance had been pleaded and introduced in evidence and that the requirements of both ordinances with respect to brightly lighted headlights on street cars had been the same, the situation would remain unchanged. When the first Public Utilities act came into force, on January 1, 1914, the power of the city over the subject matter of that act ceased to exist, and it could not thereafter pass new ordinances or enforce existing ordinances with reference to matters within the exclusive jurisdiction of the Public Utilities Commission. The power to enforce proceeds from the present or existing power or authority to enact or to provide. A municipality cannot be said to possess the power to enforce an ordinance concerning a subject upon which it has lost the power to pass the ordinance. Any attempt to enforce in such a situation would be defeated by interposing the act withdrawing the municipality's power to enact. If it had been deemed wise or necessary, municipal ordinances and police regulations relating to public utilities could have been continued in force until the commission acted, by a saving provision in the act or by an order to that effect from the commission itself. But the act contains no such provision, nor does it appear that the commission made, or was asked to make, any such order. Irrespective of the question whether or not the commission had taken any action under the powers granted to it by the Public Utilities act of 1913, the power of the city over the subject of the regulation of the equipment of public utilities ceased to exist when that act became effective, on January 1, 1914, and if the ordinance of 1911 required street cars to be equipped with brightly lighted headlights it was abrogated on that day and thenceforth became unenforce-

able. *Seattle Electric Co.* v. *City of Seattle,* 78 Wash. 203;
*Stephens* v. *Chicago, Burlington and Quincy Railroad Co.*
303 Ill. 49.

It is also contended by appellant that the second instruc-
tion given at the request of appellee was reversibly errone-
ous in authorizing a finding of negligence on proof of the
amended fourth count of the declaration. The instruction
reads:

"The court instructs the jury that while the defendant
had a right to operate its cars in the streets of the city of
Chicago, yet it was required to use reasonable care to oper-
ate its cars on such public streets with due regard to the
lawful and customary use of such streets by others, and in
this case if you believe from the preponderance of the evi-
dence that the defendant at the time deceased was killed,
was not operating the car in question with regard to the
lawful and customary use of the streets at the place where
the accident occurred by others, but was guilty of negligence
in the operation of said car as charged in the declaration
or some count thereof, and that such negligence caused the
death of plaintiff's intestate and that the plaintiff's intestate
at and before he was injured was in the exercise of ordi-
nary care for his own safety, and that the widow and next
of kin suffered pecuniary loss by reason of the death of
said deceased, then you should find the defendant guilty."

This instruction authorized the jury to find appellant
guilty of the negligence charged in any count of the decla-
ration. The amended fourth count alleged the existence of
the ordinance of December 28, 1914, and charged negli-
gence as follows: "Contrary to the provisions of said ordi-
nance, the said defendant, by its said servants, at the time
and place aforesaid, wholly failed and neglected to have
said street car equipped with a brightly lighted headlight,
and through its said servants said defendant then and there
so negligently and carelessly operated said street car with-

out a brightly lighted headlight that said street car then and there ran into and struck plaintiff's intestate with great force and violence." The negligence charged in this count is the operation of the car without a brightly lighted headlight, in violation of the ordinance. The. car had no such headlight, but the ordinance requiring it was void. The amended fourth count failed to charge actionable negligence, and yet the verdict, under appellee's second instruction, may have been based solely upon it. If the facts alleged in a particular count are true but create no liability on the defendant's part, the giving of a peremptory instruction authorizing a recovery if the jury find the defendant guilty of negligence as charged in the declaration or some count thereof, is erroneous, for the verdict may be based on grounds which do not constitute actionable negligence. *Bale* v. *Chicago Junction Railway Co.* 259 Ill. 476; *Schlauder* v. *Chicago and Southern Traction Co.* 253 id. 154; *Cantwell* v. *Harding,* 249 id. 354; *Gromer* v. *Borders Coal Co.* 246 id. 451; *Krieger* v. *Aurora, Elgin and Chicago Railroad Co.* 242 id. 544.

The admission of the ordinance in evidence and the giving of appellee's second instruction constitute reversible error.

Other errors are assigned and argued by appellant, but since they are not likely to occur on another trial we do not deem it necessary to consider them.

The judgments of the Appellate and circuit courts are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*

FARMER and DUNCAN, JJ., dissenting.