John **BLAAUW**, a minor, by Gerhard Blaauw, his father and next friend, and Gerhard Blaauw, Plaintiffs-Appellants,

v.

**GRAND TRUNK WESTERN RAILROAD COMPANY**, a corporation, Defendant-Appellee.

No. 14329.

United States Court of Appeals
Seventh Circuit.

June 17, 1964.

Rehearing Denied July 22, 1964.

Richard G. Finn, William P. Butcher, Chicago, Ill., for appellants.

Edward J. Wendrow, Gerard E. Grashorn, Edward L. Foote, Chicago, Ill., for Grand Trunk Western Railroad Co., defendant-appellee, Winston, Strawn, Smith & Patterson, Chicago, Ill., of counsel.

Before DUFFY, CASTLE and KILEY, Circuit Judges.

KILEY, Circuit Judge.

The questions presented are whether the district court erred in denying plaintiffs'[1] motion for a new trial on the ground that the verdict for defendant in plaintiffs' personal injury suit was contrary to the "manifest weight of evidence"; and whether the court erred in deciding as a matter of law that the defendant railroad had no duty under a Chicago ordinance to fence its right-of-way. We think the court did not err in either ruling.

At the place of the injury, in the vicinity of 77th Place and Central Park Avenue in Chicago, defendant's right-of-way consisted of two tracks, and ran in a north-south direction. At the western boundary of the right-of-way was a six-foot cyclone fence belonging to the adjacent property owner. East of this fence, on the right-of-way, was a low place holding a pool of water in which small animals and debris gathered. Opposite this low place, on the unfenced eastern boundary of the right-of-way, was a culvert made of railroad ties which was used by neighborhood children, as steps to the right-of-way, elevated about four or five feet above Central Park Avenue, on their way to the pool of water to which they were attracted.

On June 29, 1956, John Blaauw, then five years old, went up upon the right-

---

1. Plaintiff, John Blaauw, a minor, sues for damages for personal injuries for loss of his left leg; his father, as next friend, sues to recover medical expenses.

of-way with two companions. He, alone, crawled under the couplers of two cars of a standing northbound train on the east track. After he crawled through, the train began to move. He took hold of a grab-bar on one of the cars, ran a while with the train, tripped and fell beneath the wheels. The train did not stop, the trainmen not knowing of the accident at that time.

Under Illinois law a case like this one before us, dealing with a personal injury to a child, is not "labeled" an "attractive nuisance" case, but is tried under "the customary rules of ordinary negligence cases." Kahn v. James Burton Co., 5 Ill.2d 614, 624, 126 N.E.2d 836, 841 (1955).

Count I of this case was based on common law negligence. The jury was instructed on plaintiffs' theory of negligent maintenance of a condition "attractive to children," negligent failure to fence the right-of-way and to keep a proper lookout; and that this negligence was the proximate cause of the injury. It was told to find for plaintiffs if it found the alleged negligence and proximate cause but should find for defendant if "any of these propositions was not proved." It returned a verdict of "not guilty." We are asked by plaintiffs to set this aside because it was against the "manifest weight of the evidence."

 In this diversity action this court "administers the state system of law in all except details related to [our] own conduct of business." Cohen v. Beneficial Loan Corp., 337 U.S. 541, 555, 69 S.Ct. 1221, 1230, 93 L.Ed. 1528 (1949). We assume, but need not decide, the Illinois manifest weight rule applies.[2] Under this rule questions of negligence, proximate cause and damages are preeminently questions of fact for a jury's determination, but we may set aside the verdict and judgment and remand for a new trial if we are clearly satisfied the verdict and judgment are wholly unwarranted from the manifest weight of the evidence. Kahn v. James Burton Co., 5 Ill.2d 614, 623, 126 N.E.2d 836, 841 (1955).

 However, we cannot say the verdict is against the manifest weight of the evidence because we think the jury could reasonably have found that defendant's alleged negligence was not the proximate cause of the injury. The jury might well have disregarded the minor's reason why he took hold of the grab-bar and ran with the train—that "I got a little scared * * * and I wanted to get myself on so that I could get out on the other side"—as of no consequence in the light of his admitted attempt to "flip" the train.

Because of this conclusion, that regardless of what motivated the boy's presence on the right-of-way the jury could reasonably infer that the conduct of the railroad was not the proximate cause of the injury, it is unnecessary for us to pass on the contention made that the district court erred in refusing plaintiffs permission to show that after the occurrence the pool was filled in and to argue this point to the jury. That evidence would be merely corroborative of negligence and would have no bearing on the issue of causal connection. And we see no basis for the claim that the district court abused its discretion in separating for trial the issue of liability from the issue of damages.

 The jury was instructed[3] that notwithstanding the boy's incapability of contributory negligence, that rule could not supply the necessary proof of defendant's negligence. Plaintiffs attack the instruction, not on the ground that it erroneously states the law, but because, they say, it is "clearly argumentative" and "confusing and misleading." In the

---

2. Cf. Zuckerman v. Berg Mfg. & Sales Co., 279 F.2d 904, 905–906 (7th Cir. 1960).

3. "The Court instructs the jury that * * * even though at the time of the occurrence the plaintiff John Blaauw was of such tender years as to be incapable of contributory negligence, nevertheless, absence of any negligence on his part would not serve to supply proof of negligence on the part of the defendant."

context of all the instructions, we do not see reversible error in giving the instruction.

Count II was based on the City of Chicago "Speed Ordinance" of March 26, 1890, which required that every corporation "operating a * * * railroad, within * * * the City of Chicago, shall, within such time as may be prescribed by the mayor and commissioner of public works, construct * * * on each side of its tracks, and in such place with reference thereto as the mayor and commissioner of public works shall approve or direct, * * * substantial walls or fences of such material, design, proportion and height as shall be determined and approved * * *." This ordinance was re-enacted several times to 1922, under power granted by Par. 27, Sec. 1, Art. V, of the Cities and Villages Act of 1872 [4] which conferred on Chicago the power to require fencing for the protection of persons. Heiting v. Chicago, R. I. & P. Ry. Co., 252 Ill. 466, 470–471, 96 N.E. 842, 844 (1911).

In 1913, however, the Illinois General Assembly adopted the Public Utilities Commission Act (Laws 1913, p. 459), creating the Public Utilities Commission with broad general supervision over all public utilities in the state. The Act was re-enacted in substantially the same form in 1921 (Laws 1921, p. 702) with the Illinois Commerce Commission formed as successor to the Utilities Commission. Ill.Rev.Stat., ch. 111⅔, § 1 et seq. These acts deprived Chicago of its power to pass new, or enforce existing, municipal police regulations over public utilities. Village of Atwood v. Cincinnati, I. & W. R. Co., 316 Ill. 425, 147 N.E. 449 (1925), Northern Trust Co. v. Chicago Rys. Co., 318 Ill. 402, 149 N.E. 422 (1925). The establishment of the Com-

merce Commission, with a grant of exclusive regulatory power, precludes the existence of even a residuum of concurrent power in municipalities. Hemphill v. Wabash R. Co., 209 F.2d 768, 771 (7th Cir. 1954).

The decision in Miller v. Chicago & N. W. R. Co.,[5] 254 Ill.App. 615 (1929) (abstract), rev'd on other grounds, 347 Ill. 487, 180 N.E. 454 (1932), does not persuade us that Chicago's fencing ordinance was not abrogated by the Public Utilities Act. The grounds of the Miller decision were the re-enactments of Par. 27, Sec. 1, as restoring the city's power, and Maskaliunas v. Chicago & W. I. R. Co., 318 Ill. 142, 149 N.E. 23 (1925). The first ground is unsupportable, because the several amendments of Par. 27, Sec. 1, subsequent to the passage of the Public Utilities Act, were mere continuations of the original enactment and did not restore the power to Chicago. City of Altamont v. Baltimore & O. R. Co., 348 Ill. 339, 180 N.E. 809 (1932), Hemphill v. Wabash R. Co., 209 F.2d 768 (7th Cir. 1954). And in Maskaliunas the question of the abrogation of the ordinance by the Public Utilities Act was not raised or passed upon. That decision, therefore, has no force vis-a-vis the Illinois Supreme Court decisions in Village of Atwood v. Cincinnati, I. & W. R. Co., 316 Ill. 425, 147 N.E. 449 (1925), and Northern Trust Co. v. Chicago Rys. Co., 318 Ill. 402, 149 N.E. 422 (1925), and no effect on the subsequent decision in City of Altamont v. Baltimore & O. R. Co., 348 Ill. 339, 180 N.E. 809 (1932). Nor has any reported opinion construed Maskaliunas as the appellate court in Miller did.

We therefore see no way by which the Chicago ordinance of 1890 can be said to continue in effect by its own force.

4. The provisions of the Act of 1872 are identical with § 23–34 of the Revised Cities and Villages Act of 1941, Ill.Rev. Stat., ch. 24, § 23–34 (1959) which provides the city shall have power "[t]o require railroad companies to keep flagmen at railroad crossings of streets and to pro-

vide protection against injury to persons and property in the use of their railroads."

5. Illinois Appellate Court cases decided prior to 1935 were, by statute, not binding precedents. However, we have considered the Miller opinion in reaching our result.

The Illinois Commerce Commission in 1926 entered General Order 121, which, by its terms, continued the "operation and practices" of utilities under municipal police regulations. The Order was enacted in response to the decisions [6] in Village of Atwood v. Cincinnati, I. & W. R. Co., 316 Ill. 425, 147 N.E. 449 (1925), and Northern Trust Co. v. Chicago Rys. Co., 318 Ill. 402, 149 N.E. 422 (1925), as an emergency order to prevent anarchy in the operation of utilities. In substance, the Order provided that pending and during the Commission's investigation of the "operation and practices" of utilities the public would be without protection of law; that practices and operations of utilities under municipal police regulations "heretofore having the authority of law" should be "established, continued and maintained as the practices and operations" of the utilities until the Commission's further order. The "further order" came in 1937, when the Commission expressly found and ordered that "General Order 121, to the extent that it applies to railroads, is superseded and rescinded by General Order 138."

■ Plaintiffs' attack on the validity of General Order 138 on grounds of alleged procedural errors is unavailing. Under Illinois law where a Commerce Commission order is within the statutory authority of the Commission and the Commission had jurisdiction over the parties and the subject matter of the order, procedural errors do not void the order but make it voidable only, and not subject to collateral attack. Peoples Gas Light & Coke Co. v. Buckles, 24 Ill.2d 520, 528, 182 N.E.2d 169, 174 (1962), cert. denied, 371 U.S. 185, 83 S.Ct. 266, 9 L.Ed.2d 227; Illini Coach Co. v. Illinois Commerce Commission, 408 Ill. 104, 110, 96 N.E.2d 518, 522 (1951); Colton v. Commonwealth Edison Co., 349 Ill.App. 490, 498–499, 111 N.E.2d 363, 366–367 (1953).

■ No claim has been made to us that the Commission exceeded its statutory power when it ordered that General Order 121, so far as it pertained to railroads, was superseded by General Order 138, or that the Commission did not have jurisdiction over the parties or the subject matter of the order. We must therefore conclude that General Order 121, so far as it is pertinent here, was no longer in effect, at the time of John Blaauw's injury.

We conclude the district court below did not err in directing a verdict for defendant on Count II because defendant's obligation under the 1890 ordinance was cancelled by General Order 138.

It follows that the district court did not err in overruling plaintiffs' objection to defendant's counsel's argument that defendant was not required to build a fence so far as it is pertinent to plaintiffs, under statute or ordinance, at the time of this occurrence.

We have considered, but need not discuss, the other points raised.

The judgment is affirmed.

6. Village of Atwood v. Cincinnati, I. & W. R. Co., 316 Ill. 425, 147 N.E. 449 (1925), held that the Utilities Act repealed by implication the power of municipalities to require maintenance of flagmen at railroad crossings; and Northern Trust Co. v. Chicago Rys. Co., 318 Ill. 402, 149 N.E. 422 (1925), held that the Utilities Act repealed by implication the power of municipalities to require that streetcars be equipped with brightly lighted headlights.