(No. 11901.—Judgment affirmed.)

THE STATE PUBLIC UTILITIES COMMISSION *ex rel.* Dexter Baber, Appellant, *vs.* THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY, Appellee.

*Opinion filed April 17, 1918.*

1. PUBLIC UTILITIES—*the Public Utilities Commission has power to make reasonable regulations for weighing of grain and freight.* Section 52 of the Public Utilities act, giving the Public Utilities Commission authority to enforce reasonable regulations for the weighing of grain and freight offered for shipment and to test the weights used in weighing freight on cars, necessarily implies power to decide what regulations are reasonable and what they shall be.

2. SAME—*section 52 of Public Utilities act repealed section 2 of the act of 1871, regulating the transportation of grain.* Section 2 of the act of 1871, as amended in 1877, regulating the transportation of grain, and which requires that a carrier shall furnish track scales at certain stations where grain is shipped, relates to a matter concerning which the Public Utilities Commission has been given power to make reasonable regulations by section 52 of the Public Utilities act, and said section 2 has therefore been repealed by the Public Utilities act.

3. STATUTES—*when former statute is repealed by later act.* If two statutes deal with the same subject matter and are inconsistent with each other, so that both cannot be operative as to such subject matter, the later act will be regarded as a substitute for the former and will operate as a repeal although it contains no express repealing clause.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

WILLIAM R. BACH, and STEWART W. KINCAID, for appellant.

GEORGE B. GILLESPIE, (L. J. HACKNEY, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellant, the State Public Utilities Commission, on the petition of Dexter Baber, made an order requiring the appellee, the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, to install track scales at its station at Dudley, in compliance with section 2 of an act entitled "An act regulating the receiving, transportation and delivery of grain by railroad corporations, and defining the duties of such corporations with respect thereto," in force July 1, 1871, as amended by an act in force July 1, 1877. (Laws of 1877, p. 168.) The appellee appealed from the order to the circuit court of Sangamon county, and by the judgment of that court the order was reversed, and this appeal was prosecuted by the appellant.

On March 18, 1916, Dexter Baber filed a complaint with the State Public Utilities Commission, alleging that he was engaged in buying and shipping grain at Dudley; that during the year 1915 the shipments of grain from that station on the railroad of the defendant amounted to 50,000 bushels or more, the major part of which was shipped by him; that he called the attention of the appellee to section 2 of the above mentioned act and requested the appellee to install track scales in compliance with the statute, and that the appellee had neglected and refused to comply with his request. The appellee answered, admitting that Baber was engaged in buying and shipping grain at Dudley and that

the appellee was a public utility subject to the act regulating public utilities and operated a railroad through Dudley, but denying that the shipments of grain to points in the State of Illinois in the year 1915 amounted to 50,000 bushels, and alleging that the statute denied the railways equal protection of the laws, in violation of the State and Federal constitutions, and that it did not apply to inter-State shipments. Afterward there was added to the answer, by amendment, a claim that the statute was repealed by the State Public Utilities act.

The evidence was that Baber made shipments of grain during the year 1915 from Dudley, on the railroad of the defendant, aggregating 44,858 bushels, and Rudy & Co. also shipped seventy-five cars of grain from that station, amounting to more than 10,000 bushels, and that every shipment of grain was an inter-State shipment to points without the State of Illinois, no part of the grain being shipped to any point within the State.

Counsel for the respective parties have argued at length, with citations from numerous authorities, concerning the authority of the commission with respect to inter-State commerce; whether the Inter-State Commerce act has superseded State legislation affecting purely inter-State commerce; whether the act was intended to apply to a station where the entire shipments are in inter-State commerce to points without the State; whether the act is unconstitutional because it denies to railroad companies the equal protection of the laws, and, finally, whether the statute is in force or has been repealed. The last of these questions lies at the foundation, and if there is no statute in force requiring the installment of track scales at every station from which there are annual shipments of 50,000 bushels of grain the other questions argued are of no importance.

It seems to be assumed by both parties that the State Public Utilities Commission had jurisdiction to entertain a petition and to make an order requiring a public utility to

comply with a statute of the State defining a duty and prescribing a penalty for a refusal or neglect to comply with it, rather than to bring a suit and prosecute an action for the penalty fixed by the statute, as directed by the Public Utilities act, and the only question to be considered is whether the statute is in force or has been repealed.

Section 2 is as follows: "At all stations or places from which the shipments of grain by the road of such corporation shall have amounted during the previous year to fifty thousand (50,000) bushels or more, such corporation shall, when required so to do by the persons who are the shippers of the major part of said fifty thousand bushels of grain, erect and keep in good condition for use, and use in weighing grain to be shipped over its road, true and correct scales, of proper structure and capacity for the weighing of grain by car-load in their cars after the same shall have been loaded. Such corporation shall carefully and correctly weigh each car upon which grain shall be shipped from such place or station, both before and after the same is loaded, and ascertain and receipt for the true amount of grain so shipped. If any such corporation shall neglect or refuse to erect and keep in use such scales when required to do so as aforesaid, or shall neglect or refuse to weigh in the manner aforesaid any grain shipped in bulk from any station or place, the sworn statement of the shipper, or his agent, having personal knowledge of the amount of grain shipped, shall be taken as true as to the amount so shipped. In case any railroad corporation shall neglect or refuse to comply with any of the requirements of section first, second and fifth of this act, it shall, in addition to the penalties therein provided, forfeit and pay for every such offense and for each and every day such refusal or neglect is continued the sum of one hundred dollars ($100), to be recovered in an action of debt before any justice of the peace, in the name of the People of the State of Illinois, such penalty or forfeiture to be paid to the county in which the suit is

brought, and shall also be required to pay all costs of prosecution, including such reasonable attorney's fees as may be assessed by the justice before whom the case may be tried."

In 1913 the General Assembly legislated on the subject of the regulation of public utilities, including railroads operated for the transportation of property, and enacted a statute entitled "An act to provide for the regulation of public utilities," in force January 1, 1914. (Laws of 1913, p. 459.) By that act the State Public Utilities Commission was created and given general supervision of all public utilities, with power to make and enforce reasonable regulations for the government of the same. Section 52 provides that every railroad company shall, when within its power to do so, and upon reasonable notice, furnish suitable cars to any and all persons who may apply therefor, for the transportation of any and all kinds of freight in car-load lots, and it contains this provision: "The commission shall have power to enforce reasonable regulations for the weighing of cars, and of freight offered for shipment over any line of railroad, and to test the weights made by any railroad and scales used in weighing freight on cars."

The authority to enforce reasonable regulations for the weighing of grain and freight offered for shipment and to test the weights used in weighing freight on cars necessarily implies power to decide what regulations are reasonable and what they shall be. The law is, that if two statutes deal with the same subject matter and are inconsistent with each other, so that both cannot be operative as to such subject matter, the later act will be regarded as a substitute for the former one and will operate as a repeal although it contains no express repealing clause. A requirement that a carrier shall furnish track scales is a regulation in regard to weighing cars and the freight thereon. Section 2 of the act of 1871, as amended in 1877, and the Public Utilities act, deal with the same subject, one classifying stations by the amount of grain shipped therefrom and fixing a definite rule, sub-

ject to no choice, judgment or discretion, and the other committing to the judgment of the Public Utilities Commission what will constitute a reasonable regulation. Section 2 requires the installation of track scales whether in the judgment of the commission such installation is reasonable or unreasonable, and section 2, if in force, would restrict the power of the commission to determine and enforce reasonable regulations. The one act leaves nothing to the judgment or discretion of the commission and the other commits everything to its discretion, so that the two are irreconcilable and both cannot be in effect as to the same subject matter. The judgment of the Public Utilities Commission might be that the requirement of track scales at a station like Dudley was reasonable or unreasonable or that track scales should be furnished at stations where less than 50,000 bushels of grain are shipped in a year. Inasmuch as the two acts are irreconcilable and relate to the same subject matter, section 2 was repealed by the Public Utilities act. *Board of Trustees of Illinois and Michigan Canal* v. *City of Chicago,* 14 Ill. 334; *Culver* v. *Third Nat. Bank of Chicago,* 64 id. 528; *Devine* v. *Board of Commissioners of Cook County,* 84 id. 590; *People* v. *Nelson,* 156 id. 364; *Canal Comrs.* v. *Village of East Peoria,* 179 id. 214; *People* v. *Town of Thornton,* 186 id. 162; *State Board of Health* v. *Ross,* 191 id. 87; *Pratt Institute* v. *City of New York,* 183 N. Y. 151; 5 Ann. Cas. 198.

There being no statute in force requiring the installment of track scales, the State Public Utilities Commission could not make any order based on the existence of such a statute, and the judgment of the circuit court of Sangamon county was right.

The judgment is affirmed.                *Judgment affirmed.*