(No. 21270.—)
THE CITY OF CHICAGO, Appellee, vs. THE CHICAGO GREAT WESTERN RAILROAD COMPANY, Appellant.

*Opinion filed April 23, 1932.*

WINSTON, STRAWN & SHAW, (RALPH M. SHAW, WALTER H. JACOBS, GUY A. GLADSON, and BRYCE L. HAMILTON, of counsel,) for appellant.

WILLIAM H. SEXTON, Corporation Counsel, (LEON HORNSTEIN, and MARTIN H. FOSS, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The city of Chicago recovered a judgment of $25 in the municipal court against the Chicago Great Western Railroad Company, from which the company appealed di-

rectly to this court, the validity of a municipal ordinance being involved and the trial judge having certified that in his opinion the public interest required an appeal to this court.

The statement of the claim as amended was for a penalty for a violation of sections 535 and 2941 of an ordinance of the city by using and operating scales for the purpose of weighing without having obtained the certificate required by the ordinance.

Section 2941 of the ordinance is as follows: "Any person who shall, in weighing or measuring any article for purchase or sale, or for weighing in or weighing out, within the city, use any weight, measure, scale-beam, patent balance, steelyard or other instrument, or who shall maintain, or operate any weight, measure, scale-beam, patent balance, steelyard or other instrument, whether automatic or otherwise, used for the purpose of weighing or measuring any person or animal for hire or reward, which has not been sealed or for which the aforesaid certificate has not been obtained from the inspector, as required by this article, shall be fined not less than five dollars nor more than twenty-five dollars for each offense." Section 535 fixed the amount of the inspection fees required before the delivery of the certificate required by section 2941.

The trial by the court without a jury was upon a stipulation of facts, from which it appeared that the appellant is a common carrier engaged in both interstate and intrastate commerce, owning and operating in the city of Chicago a railroad track-scale with a maximum capacity of 200,000 pounds, a wagon scale with a maximum capacity of 41,000 pounds, and three five-ton less-than-car-load and two three-ton less-than-car-load scales, all of which it used in weighing freight received by it for transportation in order to ascertain the freight charges thereon and for no other purpose, except that the wagon scale, though its primary use was for that purpose, was incidentally used to

weigh freight unloaded from cars at Chicago, such weighing being at the request of the shipper or owner of the freight and a charge of twelve and one-half cents a wagon-load being made against the shipper or owner; and in all instances where freight was weighed on the wagon scale at the request of shipper or owner, the weight so ascertained was used as a check on previous weighing of such freight, either at point of origin or en route, for the purpose of ascertaining the freight charges, and, the weights obtained on the wagon scale being out-turn weights, when in conflict with the result of any previous weighing were given preference in the assessment of freight charges. The charge of twelve and one-half cents a wagon-load was assessed in accordance with a tariff rule contained in a tariff schedule of the appellant which was at all times here involved duly published and filed with the Interstate Commerce Commission and the Illinois Commerce Commission and was in full force and effect. Freight charges are usually based upon weight of the commodity to be transported, though there are some exceptions not necessary to mention.

The appellant contends that the Utilities act of 1921 gave the Commerce Commission exclusive jurisdiction of the testing and inspection of railroad scales; that the powers of municipalities over railroad scales granted by the Cities and Villages act were impliedly repealed by the Utilities acts of 1913 and 1921; that the Weights and Measures act of 1921 did not restore those powers to the municipalities, and that section 2941 of the ordinance is so vague and indefinite as to be void. Cities have no inherent powers but when any of their acts are called in question must show a statute authorizing their exercise of power, and such statutes are strictly construed, so that any fair doubt of the existence of the power must be resolved against the municipality. Sub-sections 54 and 55 of section 1 of article 5 of the Cities and Villages act conferred upon cities and villages the power to regulate the inspection, weighing and

measuring of brick, lumber, firewood, coal, hay and any article of merchandise and to provide for the inspection and sealing of weights and measures. This has been the law since 1871, and still is unless it has been repealed or modified by subsequent legislation. The Weights and Measures act was passed in 1921, and provided for the appointment of an inspector of weights and measures in each city in the State having a population of 25,000, inhabitants or more. It empowered the city council to pass such ordinances relative to the duties to be performed by such inspector as it might deem proper not in conflict with the provisions of the statute, provided that nothing in the section of the statute authorizing the appointment of an inspector should be construed to minimize the powers or curtail the duties of any city inspector of weights and measures in any city of more than 200,000 inhabitants, as provided by ordinances of such city, nor to modify or repeal any such ordinances.

Sub-sections 54 and 55 of section 1 of article 5 of the Cities and Villages act were sufficiently comprehensive to authorize the city council to provide for the weighing of freight for shipment over the railroad of a common carrier and for the inspection and sealing of scales used for that purpose and to require a certificate of such inspection and sealing before the weighing. The Utilities act of 1913 created a State Public Utilities Commission with general supervision of all public utilities, and, among other things, provided by section 52 that the commission should "have power to enforce reasonable regulations for the weighing of cars, and of freight offered for shipment over any line of railroad, and to test the weights made by any railroad and scales used in weighing freight on cars." Other provisions provided very specifically for the supervision by the commission of the conduct of the business of railroad companies and the operation of their railroads. Every public utility was required by section 32 to furnish and maintain

such service, instrumentalities, equipment and facilities as should promote the convenience of its patrons, employees and the public and be in all respects adequate, efficient, just and reasonable, and if the commission upon a hearing (section 49) found that the rules, regulations, practices, equipment, appliances, facilities or service of any public utility were unjust, unreasonable, unsafe, improper, inadequate or insufficient, the commission was required to determine the just, reasonable, safe, proper, adequate or sufficient rules, regulations, practices, equipment, appliances, facilities, service or method to be observed, furnished, constructed, enforced or employed and fix the same by its order, decision, rule or regulation. (Section 50) Whenever the commission found that additions, extensions, repairs or improvements to or changes in the existing plant, equipment, apparatus, facilities or other physical property of any public utility ought reasonably to be made, it was required to make and serve an order directing that such additions, extensions, repairs, improvements or changes be made. The commission was given power (section 54) to ascertain, determine and fix for each kind of public utility suitable and convenient standard commercial units of service, product or commodity and to prescribe reasonable regulations for examining, measuring and testing such service, product or commodity, and to establish reasonable rules, regulations, specifications and standards to secure the accuracy of all meters and appliances for examining, measuring or testing such service, product or commodity. The commission was authorized and required (section 54) to provide for the inspection of the manner in which every public utility conformed to the reasonable regulations prescribed by the commission for examining, measuring and testing its service, produce or commodity, and was authorized to supplement such inspections by examining, measuring and testing the service, produce or commodity of any public utility. It was authorized to enter upon any premises occupied by any

public utility for the purpose of making the examinations and tests provided in the act and to set up and use on such premises any apparatus and appliances and occupy reasonable space therefor, and it was given power (section 57) to establish uniform or other standards of equipment. These provisions were sufficiently comprehensive to subject to the supervision and regulation of the commission all the service, instrumentalities, equipment and facilities of the appellant, all its rules, regulations, practices, appliances and apparatus, and to give to the commission power to examine, measure and test its service, product or commodity, to establish rules, regulations, specifications and standards to secure the accuracy of all meters and appliances for examining, measuring and testing the service rendered, and requiring the appellant to conform to the regulations prescribed by the commission for examining, measuring and testing the service. Among the appliances for measuring and testing the service rendered are the scales which measure the weight of the freight and fix the charge for its carriage.

The provision of section 52 of the Utilities act of 1921 in regard to the regulation of the weighing of cars and of freight offered for shipment is identical with the language of the act of 1913. In our judgment, in view of the purpose of the Utilities acts and of our previous decisions, this section has given to the Commerce Commission the regulation of the weighing of cars and of freight offered for shipment over any railroad and the testing of the scales used in weighing freight on cars and the weights made by any railroad. The weighing is a part of the service in the transportation of the freight which is placed under the supervision of the commission, and the power to enforce reasonable regulations in regard to it necessarily implies power to determine what regulations are reasonable and what they shall be. (*Public Utilities Com. v. Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 283 Ill. 374.) The power of supervision, the regulation of the weighing,

the testing of the weights made and the scales used having been committed to the commission must be exclusive and cannot be shared with any other authority. The power of reasonable regulation, of weighing and of testing weights and scales, included the power of inspection and testing of all scales used in weighing freight, establishing rules in regard to scales to be used and their inspection, and the right to establish these rules and enforce them, is not dependent upon any action to be taken by the city. The railroad companies were required to comply with every order, decision, rule and regulation of the commission. This requirement was inconsistent with the general rule declared in the Cities and Villages act that the city should have power to regulate the inspection, weighing and measuring of brick, lumber, firewood, coal, hay and any article of merchandise, and to provide for the inspection and sealing of weights and measures so far as these powers of the city extended to the regulation of the weighing of cars and of freight offered for shipment on railroads and the testing of weights made by any railroad and of scales used in weighing freight on cars. This is a general provision, intended to apply to all cases, while the provision of the Utilities act is a particular later statute relating only to one subject, and it is a well settled rule of construction that in such case the particular statute repeals an earlier general law to the extent of any irreconcilable conflict between their provisions, or, rather, engrafts on the general statute an exception to the extent of the irreconcilable conflict. (*Lang* v. *Friesenecker,* 213 Ill. 598; *Natural Products Co.* v. *DuPage County,* 314 id. 74; *Dahnke* v. *People,* 168 id. 102; *People* v. *Missouri Pacific Railroad Co.* 342 id. 226.) It would be impracticable to vest in two independent authorities the power to regulate these things, and since by the later law the railroad company was required to observe the orders, rules and regulations of the commission no room was left for the exercise of concurrent authority by the city. This has been the

decision in a number of cases in which the question of the power of supervision, whether by the Commerce Commission or by the officers of cities, has arisen. *Village of Atwood* v. *Cincinnati, Indianapolis and Western Railroad Co.* 316 Ill. 425; *Northern Trust Co.* v. *Chicago Railways Co.* 318 id. 402; *City of Witt* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 324 id. 494; *Chicago North Shore and Milwaukee Railroad Co.* v. *City of Chicago,* 331 id. 360; *Chicago Motor Coach Co.* v. *City of Chicago,* 337 id. 200.

It is argued on behalf of the appellee that the Weights and Measures act of 1921 specifically re-affirms the powers of the city with respect to regulation, inspection and sealing of scales, and the appellee refers especially to section 12 of the act, which provides for the appointment of an inspector of weights and measures in all cities having a population of 25,000, and confers upon the council authority to pass such ordinances relative thereto and to the duties of such inspector, not inconsistent with the act, as it may deem proper, provided that nothing in the section shall be construed to minimize the powers or curtail the duties of any city inspector of weights and measures in any city of more than 200,000 inhabitants as provided by ordinances or regulations of such city nor to modify or repeal any such ordinances. This act was passed at the same session of the General Assembly as the Utilities act of 1921 and they went into effect on the same day, July 1, 1921. They must therefore be construed together. The Utilities act contained the same provision as that of 1913 in regard to the regulation of the weighing of cars and freight and the testing of weights made for railroads and scales used in weighing freight on cars. We have already held in this opinion that the effect of this provision in the act of 1913, so continued in force in the act of 1921, was to take from the city the power of regulation of the inspection and weighing of cars and freight offered for shipment on railroads and

the inspection and sealing of weights and scales used in weighing freight on cars. Therefore the proviso to section 12 of the Weights and Measures act had no reference to the weighing of cars or freight or the testing of weights and scales for railroads. So the phrase "where not otherwise provided by law," in section 14, in connection with conferring on the city inspector of weights and measures the same powers and imposing the same duties within his city as are granted to and imposed upon the Director of Trade and Commerce by sections 7, 8, 9 and 10, may be regarded as recognizing that to a certain extent the powers of the city council conferred by sub-sections 54, 55, 56 and 91 of section 1 of article 5 of the Cities and Villages act remain in force. To some extent they also clearly recognize that in some cases it is otherwise provided by law and show the intention of the General Assembly to harmonize the Weights and Measures act with the provisions of the Utilities act. Section 57 of the Civil Administrative Code provides that the Utilities act shall be administered by the Commerce Commission without any direction, supervision or control by the Director of Trade and Commerce, and he is given no authority over the Commerce Commission by sections 7, 8, 9 and 10 of the Weights and Measures act.

The appellee argues that it had power to regulate the wagon scale. In its argument it is said: "Any person may drive a wagon up to the public wagon scale operated by this railroad company and have his commodity weighed in the belief that he is obtaining an authoritative weight from a public weighmaster while the scale may be registering weights incorrectly." The closing paragraph of the argument contains the statement: "Inasmuch as there can be no question as to the right of the city to regulate the scale which the appellant operates as a public weighmaster, the case seems to be absolute so far as that particular scale is concerned." These statements are wholly at variance with the facts, which were stipulated as follows: "That

the aforesaid wagon scale at Thirteenth and Lumber streets during all times herein mentioned was primarily used for the purpose of weighing freight, in order to ascertain the freight charges thereon; that said wagon scale, however, was incidentally used to weigh freight unloaded from cars at Chicago, Illinois, said weighing being at the request of the shipper or owner of the freight, and a charge therefor of twelve and one-half cents per wagon-load was assessed against the shipper or owner; that in all instances where freight was weighed on said wagon scale at the request of shipper or owner the weight so ascertained was used as a check on previous weighing of such freight, either at point of origin or en route, for the purpose of ascertaining the freight charges, and the weights obtained on said wagon scale being out-turn weights, when in conflict with the results of any previous weighing were given preference in the assessment of freight charges; that said charge of twelve and one-half cents per wagon-load was assessed in accordance with a tariff rule contained in a tariff schedule of defendant, which at all times herein mentioned was duly published and filed with the Interstate Commerce Commission and with the Illinois Commerce Commission and in full force and effect; that said tariff rule, which was at all times herein mentioned, and still is, in full force and effect, was and is in words and figures as follows:

" 'Weighing freight on wagon scales at Chicago, Ill., or Milwaukee, Wis.—When freight unloaded from cars at Chicago, Ill., or Milwaukee, Wis., stations, is weighed on wagon scales at request of shipper or owner, charge for this service will be twelve and one-half cents per wagon-load.' "

The wagon scale was used for no other purpose than weighing freight, primarily for determining the freight charges—at times, however, at the request of the shipper or owner—and when so weighed a charge of twelve and one-half cents a wagon-load was made against the shipper or owner in accordance with a tariff rule contained in a

tariff schedule of the railroad company published and filed with the Interstate Commerce Commission and with the Illinois Commerce Commission, and the weight so ascertained was used as a check on previous weighings of such freight, either at the point of origin or en route, for the purpose of ascertaining the freight charges, and the weights on the wagon scale being out-turn weights, when in conflict with any previous weighing were given the preference in the assessment of freight charges. The entire use of the wagon scale was for railroad purposes. The weighing was an additional service, for which the railroad company was required to charge on its interstate shipments. (*Louisville and Nashville Railroad Co.* v. *Maxwell,* 237 U. S. 94; *Atchison, Topeka and Santa Fe Railway Co.* v. *Robinson,* 233 id. 173; *Chicago and Alton Railroad Co.* v. *Kirby,* 225 id. 155.) The Interstate Commerce act defines "transportation" as including all services in connection with the receipt, delivery and handling of property transported. (Sec. 1, par. 3.) Paragraph 4 of section 1 declares it to be the duty of every common carrier in interstate commerce "to provide and furnish such transportation upon reasonable request therefor." Paragraph 5 of section 1 requires all charges for any service rendered in the transportation of property to be just and reasonable, and paragraph 7 of section 6 requires charges for the interstate transportation of property to be specified in the published tariffs and strictly observed, and forbids the extension to any person of any privileges and facilities in the transportation of persons or property except such as are specified in such tariffs. The wagon scale, as well as the other scales of the appellant, were exempt from any interference by the city, and section 2941 of the ordinance, so far as it purports to apply to railroad corporations engaged in the transportation of freight as common carriers, is void for the want of power in the city to enact it.

The judgment of the municipal court is reversed.

*Judgment reversed.*