**HEMPHILL v. WABASH R. CO.**

No. 10945.

United States Court of Appeals
Seventh Circuit.

Jan. 7, 1954.

Rehearing Denied Feb. 17, 1954.

Swaim, Circuit Judge, dissented.

769

Omer Poos, Hillsboro, Ill., for appellant.

Miles Gray, Norman P. Jones, Springfield, Ill., Joseph H. Miller, Richard B. Elster, St. Louis, Mo., of counsel, for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

This action was brought by the Executor of the Estate of Joseph Bostick Liston, Deceased, to recover damages for the death of the decedent which was alleged to have been caused by the negligence of defendant in running its train across a grade crossing, in the Village of Raymond, Illinois, in violation of an ordinance of that village limiting the speed of trains within its corporate limits to ten miles per hour. On defendant's motion to dismiss, on the theory that the ordinance was invalid, the District Court entered judgment for defendant. The sole question presented by this appeal is as to the validity of this ordinance.

As a back-ground in considering the issue presented, it is well, we think, to observe the basic attributes of and limitations upon municipalities. Cities and villages are corporate entities existing under and by virtue of state law and, therefore, are possessed of no inherent power independent of statute. Thus, when an act of a municipal corporation is called into question the burden is on the municipality to show a statute authorizing its exercise of the power, and any doubt as to the existence of this power should be resolved against it. City of Chicago v. Chicago Great Western R. Co., 348 Ill. 193, 180 N.E. 835.

Because of this elemental conception of the municipality as a creature of strictly limited, delegated powers, the existence of the authority here said to reside in the Village, is clouded with doubt at the threshold of our consideration. By the Cities and Villages Act of 1872, the General Assembly expressly delegated to municipalities the power to regulate the speed of "locomotives" within their corporate limits. I.R.S. c. 24, Art. V, Sec. 21 (1939). In 1921 the present Public Utilities Act was enacted creating the Commerce Commission and vesting in it general power to supervise and regulate public utilities, I.R.S. c. 111⅔, Sec. 1 et seq. (1951), including the power to require every public utility to maintain and operate its property in such manner as to promote and safeguard the health and safety of the public. Section 57, I.R.S. c. 111⅔, Sec. 61. It is unnecessary to comment further on the broad scope of this statutory grant of exclusive power other than to point out that an examination of the statute discloses that the Commission is given supervisory and regulatory power over every phase of public utility operation, and that every utility is enjoined to abide by requests and orders of the Commission. See e. g., Sections 8, 8a, 9, 10a and 61.

Faced with the conflict created between the Cities and Villages Act, which in general terms empowered cities to regulate the speed of railway trains, and the specific grant of power to the Commerce Commission to regulate the operation of public utilities, the Supreme Court of Illinois held invalid a city ordinance regulating the speed of trains operating within its corporate limits. City of Witt v. Cleveland, C., C. & St. L. Ry. Co., 324 Ill. 494, 155 N.E. 325. The court said in 324 Ill. at page 496, 155 N.E. at page 325: "By this act the General Assembly, in its discretion, with-

drew from cities and villages the power theretofore exercised by them with reference to the speed and operation of railway trains, and such power is now vested in the Commerce Commission, another agency of the government." (Citing authorities.) And, prior to 1941, this same interpretation of the Public Utilities Act was applied repeatedly to invalidate municipal ordinances enacted by authority of the general provisions of the Cities and Villages Act to regulate the operation of public utilities. City of Altamont v. Baltimore & O. R. Co., 348 Ill. 339, 180 N.E. 809; City of Chicago v. Chicago Great Western R. Co., 348 Ill. 193, 180 N.E. 835; Chicago Motor Coach Co. v. City of Chicago, 337 Ill. 200, 169 N.E. 22, 66 A.L. R. 834; Chicago, N. S. & M. R. Co. v. City of Chicago, 331 Ill. 360, 163 N.E. 141; Northern Trust Co. v. Chicago Rys. Co., 318 Ill. 402, 149 N.E. 422; Village of Atwood v. Cincinnati, I. & W. R. Co., 316 Ill. 425, 147 N.E. 449.

In 1941, however, the General Assembly enacted the Revised Cities and Villages Act, I.R.S. c. 24, Sec. 1 et seq. (1951), which included a substantial re-enactment of Article V, Section 21 of the prior act, viz., municipalities were again granted the power "To regulate the speed of animals, vehicles, cars, and locomotives." Section 23-28. Section 87-1 of the Act provides that "The provisions of this Act shall be cumulative in effect and if any provision is inconsistent with another provision of this Act or with any other Act not expressly repealed by Section 87-4 it shall be considered as an alternative or additional power and not as a limitation upon any other power granted to or possessed by municipalities. But the provisions of this Act shall not be considered as impairing, altering, modifying, or repealing any of the jurisdiction or powers possessed by any department, board, commission, or officer of the State Government immediately prior to the effective date of this Act."

Plaintiff argues that the legislature, by enacting these provisions, restored to municipalities the power to regulate the speed of trains to be exercised concurrently with a like power vested in the Commerce Commission. To sustain this contention he relies principally on Aliotta v. City of Chicago, 389 Ill. 418, 59 N.E.2d 829, in which the court held that the power granted to cities in 1935 to regulate barbers and barber shops was not recalled by a statute enacted in 1937 delegating to the Department of Registration and Education power to adopt rules to regulate the sanitation of barber shops and barber schools. Of section 87-1 of the Revised Cities and Villages Act the court said at pages 421-422, of 389 Ill., 59 N.E.2d at pages 830-831, "These statutory provisions negative the theory that the power of the city to license or regulate barbers has been repealed by the act of 1937. Section 2 of the Act relating to construction of statutes, Ill.Rev.Stat.1943, chap. 131, par. 2, providing that a re-enactment of a former statute, as far as it is the same, shall not be considered a new enactment, does not apply, for the reason that, while the barber provision in the 1941 Revised Cities and Villages Act is the same as that found in the laws of 1935, it has, in addition, attached and read into it a part thereof that, in case of conflict, the provision in the later act shall be considered either as an alternative or additional power." Of the cases there relied on by appellants, the court said, "There was clear repugnancy in those cases; there is no repugnancy in this case."

Thus the court held only that Section 87-1 operates to prevent a grant of authority to a department of the state government from effectuating a repeal by implication of a prior grant of like authority to municipalities, absent repugnancy between the two statutory grants. In such case the power may be exercised concurrently by the two governing bodies. The touchstone of this decision, therefore, is want of repugnancy in the concurrent exercise by two distinct agencies of power over the same subject matter. Only a strained interpretation of this opinion would require,

or indeed support, we think, a like result where, by the statutory grant to one of the competing agencies, the legislature has evinced an intention to delegate to that agency exclusive power over the subject matter. In any case, the determinative inquiry becomes one of whether, in the light of judicial construction of the specific grant to the department of the state government, here, the Commerce Commission, any residuum of power remains which municipalities may exercise by virtue of the general grant of the Act of 1941. If none is found, the existence of a concurrent power exercisable by the municipal body is negated.

Plaintiff's contention, we believe, loses sight of this controlling basis on which the Aliotta case must be distinguished from the case at bar. The Barber's Act has never been construed as an exclusive grant to the Department of Registration and Education of power to regulate barbers, while the courts have repeatedly construed the Public Utilities Act as an exclusive grant of regulatory power to the Commerce Commission and its predecessor, the Public Utilities Commission. Compare, grant of power in I.R.S. c. 16¾, Sec. 14.40 with that in I.R.S. c. 111⅔, Sections 8, 61. Compare Aliotta v. City of Chicago, supra, with Chicago Motor Coach Co. v. City of Chicago, 337 Ill. 200, 169 N.E. 22. Thus, in the Chicago Motor Coach case, 337 Ill. at page 209, 169 N.E. at page 26, the court declared: "The language of the act is sufficiently comprehensive to subject every phase of the relations between every public utility and the public to the supervision and regulation of the Public Utilities Commission. * * * [The court here summarizes the scope and nature of the powers granted to the Commission by the Act of 1913.] These provisions certainly covered the whole field of service of every utility. They left no room for the exercise of authority of any other body." Again in City of Chicago v. Chicago Great Western R. Co., 348 Ill. 193, 199–200, 180 N.E. 835, 838, the court said: "It would be impracticable

to vest in two independent authorities the power to regulate these things [scales and weights of freight shipments] and, since by the later law the railroad company was required to observe the orders, rules, and regulations of the commission, no room was left for the exercise of concurrent authority by the city. This has been the decision in a number of cases in which the question of the power of supervision, whether by the Commerce Commission or by the officers of cities, has arisen." Citing, Atwood, Northern Trust, City of Witt, Chicago, N. S. & M. R. Co. and Chicago Motor Coach cases, all supra. As recently as 1947 the court has held that the Public Utilities Act covers "the entire subject" of public utility regulation. Illinois Central R. Co. v. Illinois Commerce Commission, 397 Ill. 323 at page 329, 74 N.E.2d 545 at page 548.

We are dealing, therefore, with a body possessing what has been judicially construed as exclusive powers over the regulation of public utilities. No residue of power remains with respect to this subject matter which any other agency may exercise. The existence of the exclusive grant necessarily precludes concurrent jurisdiction residing in any other body. Thus, the question whether we are to consider Section 23–28 of the Revised Cities and Villages Act a continuation of the prior provisions of the Act of 1872, and subject, therefore, to the limitations of prior judicial construction, Lamere v. City of Chicago, 391 Ill. 552, 63 N.E.2d 863, or a new enactment becomes purely academic. In either event, the result must be the same. The second sentence of Section 87–1 expressly disavows any legislative intent that the Revised Act should in any way operate in derogation of the powers of the Commerce Commission, and the scope of those powers must be found in decisions of the courts of Illinois construing the Public Utilities Act.

The argument that the Village possesses concurrent power with the Commission to regulate the speed of trains

passing through its corporate limits must of necessity operate in derogation of the powers lodged exclusively in the commission. This is the type of repugnancy which the court held to be non-existent in the Aliotta case, but which the court there indicated must, if it exists, require the municipal ordinance to be stricken down.

The judgment dismissing the amended complaint must be and is affirmed.

SWAIM, Circuit Judge (dissenting).

I think that the interpretation by the Supreme Court of Illinois of the Revised Cities and Villages Act of 1941 in Aliotta v. City of Chicago, 389 Ill. 418, 59 N.E.2d 829, 830, must be followed by this court and that if followed we must hold that the power granted to cities in the 1941 Act to regulate the speed of trains within their municipal boundaries must be construed either " * * * as an alternative or additional power granted to or possessed by municipalities."

I agree, of course, that the municipalities are created by the state legislature and have only such powers as the legislature may see fit to give. But we must also agree that this is likewise true of the Commerce Commission, also created by the state legislature. Powers of municipalities and of the Commerce Commission may be given, may be taken away and may be again given at any time the legislature sees fit to do so. I am in complete agreement that prior to the enactment of the Revised Cities and Villages Act the power of municipalities to regulate the speed of trains within their borders had been withdrawn by the legislature having given this power to the Commerce Commission.

But in the Aliotta case the Supreme Court of Illinois held that a statute giving to cities the power to regulate and license barbers and a later statute giving like power to a department of the state must be read in the light of the Revised Cities and Villages Act which again granted to cities the power to regulate barbers, and provided in Section 87-1:

"The provisions of this Act shall be cumulative in effect and if any provision is inconsistent with another provision of this Act or with any other Act not expressly repealed by Section 87-4 it shall be considered as an alternative or additional power and not as a limitation upon any other power granted to or possessed by municipalities. But the provisions of this Act shall not be considered as impairing, altering, modifying, or repealing any of the jurisdiction or powers possessed by any department, board, commission, or officer of the State Government immediately prior to the effective date of this Act."

The court said, 389 Ill. at page 421, 59 N.E.2d at page 831, that "these statutory provisions" negative the theory that the power of the city to regulate barbers had been repealed and held that this provision of the Act, together with the provisions copied from the earlier Cities and Villages Act giving cities the regulatory power over barbers, should "be considered either as an alternative or additional power." After noting that the regulation of barber shops came under the general police power, the court said that it had many times held that a municipality might exercise police powers concurrently with the State and concluded that the city ordinance in the exercise of such concurrent police power was valid.

It is true that the Aliotta case involves a different statute (the Barbers Act) which the Illinois Supreme Court had never held to have taken away from the cities their power to regulate barbers, a power which had been granted by an earlier act. There, as here, however, we have the alleged conflict between a broad state statute, giving to a state department certain police powers, and a city ordinance purporting to exercise police powers in the same field by virtue

of a statute enacted before the statute giving these powers to the state department.

The reasoning of the cases decided prior to the Revised Cities and Villages Act on the subject of repeal by such a conflict makes it perfectly clear, I think, that had the Barbers Act and the prior conflicting city ordinance been presented to it prior to the Revised Cities and Villages Act, the Supreme Court of Illinois would have held that the prior grant to the cities had been repealed and that the ordinance was invalid. In the Aliotta case the ordinance was saved only by the interpretation by the court of Section 87–1 of the Revised Cities and Villages Act, by the fact that the court, 389 Ill. at page 421, 59 N.E.2d at page 830, "attached and read into it a part thereof that, in case of conflict, the provision in the later act shall be considered either as an alternative or additional power."

The defendant has pointed out that when the Barbers Act was amended in 1947, and again in 1949, the legislature provided, by Section 62, Ch. 16¾, Sec. 14.96, Ill.Rev.Stat. (1951), that nothing in the Act should limit or repeal any power of municipalities over barbers and that there is no such provision as this in the Public Utilities Act. But the amendment of the Barbers Act in 1947 and 1949 could not have influenced the Supreme Court of Illinois in the Aliotta case which was decided in 1945.

We must assume that the second sentence of Section 87–1 of the Revised Cities and Villages Act was also considered by the Supreme Court of Illinois in the Aliotta case, and that the court held that the grant by the state to the municipalities of police power over barbers, to be exercised concurrently with the Department of Registration and Education, did not impair, alter, modify or repeal any of the jurisdiction or powers possessed by that Department.

I think that since the Supreme Court of Illinois has construed the Revised Cities and Villages Act we are bound by that construction regardless of how we might have construed the Act had there been no such prior construction.

We should, therefore, reverse the judgment of the District Court.