646

THE COUNTY OF ST. CLAIR, Appellant, *vs.* THE PENNSYL-
VANIA RAILROAD COMPANY *et al.*—(THE LANSDOWNE
IMPROVEMENT ASSOCIATION, Appellee.)

*Opinion filed February 18, 1931.*

HILMAR C. LINDAUER, State's Attorney, and F. J. TECK-
LENBURG, for appellant.

LOUIS BEASLEY, and EDWARD C. ZULLEY, for appellee.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellant, the county of St. Clair, filed its petition un-
der the Commerce Commission act against the Pennsylvania
Railroad Company and the Baltimore and Ohio Railroad
Company for the installation of a subway or viaduct at a
point where the tracks of said companies cross State aid
route 19, in said county, the highway being commonly known
as Kings highway. Evidence was heard and the cause was

taken under advisement. Before a decision was rendered, the city of East St. Louis, the village of Fairmont and the Lansdowne Improvement Association filed an intervening petition, in which they alleged that route 19 was not a major traffic route in East St. Louis and that a separate crossing at that place would not materially benefit the intervenors; that the most feasible place for a subway or viaduct was at Fortieth street, in East St. Louis; that such a subway or viaduct would be less expensive, would require the crossing of only nine tracks and the construction of five blocks of new highway instead of five miles, as would be required if the subway were placed on route 19. The prayer was for the improvement at Fortieth street and not on route 19. Additional evidence was taken under the intervening petition. The commission denied the prayer of the intervening petition and entered an order for a viaduct on route 19 at a cost of $203,000, of which appellant was to pay $35,000. The Pennsylvania Railroad Company and the Lansdowne Improvement Association filed petitions for a rehearing, which were denied, and they prosecuted an appeal to the circuit court of St. Clair county. The Pennsylvania Railroad Company subsequently dismissed its appeal and the case was heard upon the appeal of the Lansdowne Improvement Association. The court affirmed the order denying relief under the intervening petition, set aside the order granting relief under the original petition, and an appeal has been prosecuted to this court.

It is urged by appellant that the circuit court was in error in setting aside the order for a viaduct on route 19 and that there is no evidence to support the judgment. Appellee insists that improper evidence was admitted; that the finding of the commission is based upon its own investigation, the evidence of which is not in the record; that State bond route 157, which skirts the city of East St. Louis and connects State bond routes 11, 12, 13 and 15, is amply sufficient to take care of the traffic, and that route 19 is merely

a duplication of route 157; that there is not now, and never will be, any traffic over route 19; that a subway at that point is unnecessary and is a waste of money; that the commission improperly denied a rehearing to appellee and improperly deprived it of an opportunity to prove the allegations in its petition for a rehearing, and that the order of the commission is unreasonable, unnecessary and improper.

The law governing actions of this kind has been announced by this court in many cases. It has been held that the order of the Commerce Commission can only be set aside when it is arbitrary, unreasonable or in clear violation of some rule of law; that if the order is without substantial foundation in the evidence it should be set aside; that if from any reasonable view of the evidence the order rests on a reasonable and substantial basis and does not infringe any of the constitutional rights of the parties it should be sustained; that the law does not authorize a court to put itself in the place of the commission, try a question presented to the commission and substitute its own judgment for that of the commission; that whether it is reasonable to require a separation of grades is a question of fact and no general rule can be stated which will serve as a guide for determining the question in all cases, and that the important and outstanding things to weigh and consider are the location of the crossing, the conditions surrounding it and the amount of traffic passing over it. *Campbell* v. *Commerce Com.* 334 Ill. 293; *Town of Sidney* v. *Wabash Railway Co.* 333 id. 126; *Commerce Com.* v. *Chicago and Eastern Illinois Railway Co.* 332 id. 243; *Commerce Com.* v. *Omphghent Township,* 326 id. 65.

The evidence shows that State bond issue routes 11, 12, 13, 15 and 157, all of which are improved, radiate in fan-shape from East St. Louis northeasterly, easterly and southeasterly. Route 157 skirts the easterly and southeasterly industrial sections of East St. Louis and its suburbs and forms an inner belt connecting these various State bond

issue routes. State bond issue route 4 starts out of the city of East St. Louis in a northeasterly direction and passes underneath the two railroad rights of way in question through the Ninth street subway, near the north limits of East St. Louis, and unites with route 11. This subway is about two miles west of route 19. Route 11 is partly along the north boundary line of St. Clair county. As it comes from the east it angles to the southwest, connects with route 4, passes through the Ninth street subway under the tracks of the two railroads and enters East St. Louis. The village of Fairmont adjoins East St. Louis on the north and east. A part of the north line of Fairmont is route 11, which is also the north line of the county. Fairmont has a population of about 1100. It is principally an industrial city and employs about 750 men. South of Fairmont, and adjacent thereto and east of and adjacent to East St. Louis, is the village of Washington Park, which is largely a residential section, but it has one industry employing about 150 men. Certain employees of the factories in Fairmont live in Washington Park and use the crossing on route 19 daily, while others live in East St. Louis and use street cars and interurbans in going to and from their work. Extending east and west on the boundary line between Fairmont and Washington Park are the rights of way of the two railroads in question. Route 19 starts at the north on the county line at a point where route 11 begins to angle to the southwest to enter East St. Louis. It extends south directly through the village of Fairmont and crosses the two rights of way of the railroads, which at that point are about 600 feet wide. It then extends south through Washington Park, intersects routes 12, 13 and 15 and connects with route 157 southeast of Cahokia Commons, a total distance of about thirteen miles south of the county line. The east end of the Rose Lake yards of the Pennsylvania Company extends at grade across route 19. There are nine yard tracks at this point, and four main tracks upon which

trains are operated at a high rate of speed. The view of trains approaching the crossing is obstructed on account of the heavy switching over the crossing and by cars standing on the yard tracks. At present there are no major connecting routes extending north and south whereby through highway traffic may pass from one of the State bond issue routes to another without having to pass through the congested business district of East St. Louis. This condition causes considerable loss of time and a greater distance has to be traveled. Some years ago citizens of East St. Louis, St. Louis and smaller municipalities near there considered laying out and constructing major traffic routes in and through the metropolitan area of East St. Louis in order to eliminate traffic congestion as far as possible and provide a network of improved highways for the convenience of highway traffic and the furtherance of industrial development, and route 19 was designated as one of these major routes. At the present time route 19, where it crosses the railroad tracks in question, is not paved and is not used to any considerable extent because of the danger of crossing thirteen tracks at grade. West of route 19 are the yards of the Pennsylvania Company, which are used for switching and storage purposes. Some years ago this railroad made application to the Commerce Commission for leave to put in five additional tracks across route 19, but the permission was denied because of the additional danger of more tracks to be crossed at grade.

The evidence shows that within a radius of twelve to fifteen miles from East St. Louis, on both sides of the river, there is a population of about 800,000 people, together with various industries and the terminals or sub-terminals of about twenty railroad systems. Practically all of the highway traffic entering St. Louis from the northeast and southeast first passes through East St. Louis, and therefore it is apparent that an adequate system of highways should extend not only in an east and west direction but also north

and south, especially in the territory east of the Mississippi river, so that all the north and south-bound traffic may have an opportunity of using an alternative route and not pass through the congested district of East St. Louis. The improvement of route 19 would connect all of the State aid roads between route 11 on the north and route 157 on the south. It would not be a duplication of route 157. It would be an improvement for general use and would serve both through and local traffic. The nearest public highway crossing over the tracks of the railroads to the east is about one-half mile, while the nearest crossing to the west is the Ninth street subway, a distance of two miles. Any plan of grade separation must, of necessity, provide for yard tracks over the crossing and should not only include the existing tracks but also additional tracks to take care of future business. There is evidence in the record amply sustaining the contention of appellant that a viaduct should be erected over the tracks of the two railroad companies on route 19, and the court was in error in setting aside the order of the commission in this respect.

As to the crossing at Fortieth street, in the city of East St. Louis, proposed by the intervenors, the evidence shows that this street is not opened across the tracks or the right of way of the railroad companies. This proposed crossing is about three-fourths of a mile west of the crossing on route 19 and about one and one-fourth miles east of the Ninth street subway. It would be across the middle of the Pennsylvania yards. On account of Fortieth street not extending north into Fairmont it would be necessary to construct an offset about one block to the east to Vandalia avenue, which is the main street in the village. Such a crossing would be of little benefit to through traffic. It could be used to some extent by persons living in Fairmont who had business in East St. Louis. A crossing at this point would be expensive. A grade crossing would be hazardous on account of the numerous switching movements made

thereon. There is no evidence that the intervenors are willing to bear any considerable portion of the expense of such a crossing. Neither Fortieth street nor Vandalia avenue is a State aid or bond issue road, and neither the county of St. Clair nor the State highway department could be called upon to bear the expense of a portion of the crossing. The evidence shows that in 1920 and 1922 a petition was filed to extend Vandalia avenue across the same tracks by means of an under-crossing and permission was not granted. People living in Fairmont now have access to a paved highway on routes 4 and 11 into East St. Louis without crossing any tracks. The main business section of East St. Louis is to the south of the Ninth street subway. Under the facts in evidence the commission properly refused to establish a crossing at Fortieth street and the circuit court correctly sustained that finding.

The judgment of the circuit court is reversed and the cause remanded, with directions to the circuit court to affirm the order of the Commerce Commission.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*