(No. 22145.—)

THE CITY OF CHICAGO, Appellant, *vs.* THE ILLINOIS COM-
MERCE COMMISSION *ex rel.* The Chicago and Western
Indiana Railroad Company, Appellee.

*Opinion filed May 17, 1934—Rehearing denied June 13, 1934.*

502

WILLIAM H. SEXTON, Corporation Counsel, (JOSEPH F. GROSSMAN, FRANK J. BREEN, and THOMAS A. MURPHY, of counsel,) for appellant.

J. R. BARSE, and SAMUEL KASSEL, (JOHN L. McINERNEY, of counsel,) for appellee.

Mr. JUSTICE DeYOUNG delivered the opinion of the court:

The city of Chicago filed with the Illinois Commerce Commission a petition, an amended petition and a supplementary petition against the Chicago and Western Indiana Railroad Company and the New York, Chicago and St. Louis Railroad Company. By these petitions, the city charged that public convenience and necessity required the construction of a subway under the tracks of the respondents at Ninety-fifth street, and sought the entry of an order to compel them to construct the improvement at their sole expense, in compliance with the provisions of certain ordinances theretofore passed by the city council. The Commerce Commission found that public safety and convenience required a separation of grades at the particular

intersection and entered an order for the construction of the subway in substantial conformity with the specifications submitted by the petitioner and apportioned the cost and expense of the improvement between the petitioner and the respondents. The commission retained jurisdiction of the cause for the purpose of entering such further orders as it might deem necessary and appropriate. The city filed a petition for a rehearing and the petition was denied. Upon appeal, the circuit court of Cook county confirmed the order of the Commerce Commission. The city of Chicago prosecutes this appeal from the order of the circuit court.

It is alleged in the petitions that on April 5, 1911, the city council passed an ordinance requiring the Chicago and Western Indiana Railroad Company, the New York, Chicago and St. Louis Railroad Company and other railroad companies to make certain elevations of their respective tracks, and to build certain subways appurtenant thereto, including a subway at Ninety-fifth street near Stony Island avenue under the tracks of the two railroads first named; that an amendatory ordinance passed on July 15, 1924, altered some of the specifications for the various improvements; that the two companies concerned in this proceeding filed acceptances of the ordinance of April 5, 1911, as amended; that the amended ordinance, to the extent that it requires the construction of subways by the railroad companies, is a contractual obligation, binding upon them, and that the commission should recognize the terms of the ordinance in apportioning the cost of constructing the required subways.

Ninety-fifth street runs west through the city of Chicago from a point near Lake Michigan to Archer avenue in the county of Cook, a distance of nineteen miles. The street, towards its east end, traverses a district devoted to industrial purposes, while that portion which extends west from the city limits is an improved State highway running

through villages and rural territory. About two and one-half miles west of the eastern terminus of Ninety-fifth street and a short distance west of Stony Island avenue, six tracks of the respondents cross the former street at grade. Upwards of sixty trains of the Chicago and Western Indiana Railroad Company and a lesser number of the New York, Chicago and St. Louis Railroad Company are operated over these tracks each day and the number of vehicles which pass over the crossing daily exceeds five thousand. The railroad trains are required to reduce their speed and occasionally to stop before proceeding across the street intersection and, in consequence, both the trains and the traffic on the street are delayed. The estimated cost of the proposed improvement is approximately $300,000.

The Commerce Commission found that one-half of the total cost of the subway should be borne by the city and the remaining half by the two railroad companies. The New York, Chicago and St. Louis Railroad Company had indicated its willingness to bear its proportion, based on the assumption that the two respondents defray the whole cost of the improvement as required by the ordinance, provided it could obtain a satisfactory adjustment respecting the construction of another subway under its tracks in One Hundred and Third street. The order directed that the two companies determine the proportion which each should bear on the basis of their assumption together of the entire cost; that, from the proportion allotted to the New York, Chicago and St. Louis Railroad Company, however, there should be excluded any sum chargeable to right of way and adjacent property damage; that the remainder of the cost so charged to the Chicago and Western Indiana Railroad Company should be divided equally between the city and the company, and that the city also should bear that portion of the cost of right of way and adjacent property damage which otherwise would have been assumed by the New York, Chicago and St. Louis Railroad Company.

The appellant concedes that the Commerce Commission had jurisdiction to determine the necessity for the particular grade separation and to prescribe the specifications for the construction of the subway, but contends that, in dividing or apportioning the cost of the improvement, the commission transcended its powers. To support this contention, the appellant relies upon the ordinance of April 5, 1911, as amended by the ordinance of July 15, 1924, both of which were accepted by the Chicago and Western Indiana Railroad Company, the appellee, and the New York, Chicago and St. Louis Railroad Company. The appellant asserts that, by their acceptance of these ordinances, the two railroad companies became obligated, by binding and enforcible contracts, to bear the whole cost and expense of constructing the particular subway. To sustain the order of the commission, the appellee maintains that the apportionment of the cost of the grade separation is one of the factors involved in the Commerce Commission's exercise of the police power of the State to regulate grade crossings in the interest of the public safety, and that in so far as the commission's order concerning such cost and expense conflicts with the ordinances, the order supersedes and abrogates their provisions. The question thus presented is whether that part of the contested order which apportions the cost of eliminating the grade crossing impairs a contractual obligation between the appellant and the appellee in violation of constitutional inhibitions.

The legislature, by the Public Utilities act (Laws of 1921, p. 702), created the Illinois Commerce Commission and vested it with general supervision of all public utilities. The commission has the power to regulate their rates and services, to hold investigations, inquiries and hearings, to make findings and to enter its orders thereon. Section 9 of the act requires compliance by public utilities with the orders, decisions or regulations made or prescribed by the commission and within its jurisdiction. By section 10, rail-

roads are included in the act. Section 58 (Cahill's Stat. 1933, p. 2202; Smith's Stat. 1933, p. 2247) provides that the commission shall have power, after a hearing, when in its opinion the public safety requires it, to alter or abolish any existing or future grade crossing, or to require a separation of the grades at such crossing, and to prescribe, after a hearing of the parties, the terms upon which such separation shall be made and the proportion in which the expense of the alteration or abolition of such crossing or the separation of such grades shall be divided between the railroad or street railroad companies affected, or between such companies and the State, county, municipality or other public authority in interest.

The power to require railroads to elevate their tracks and to alter or abolish grade crossings, prior to January 1, 1914, when the original Public Utilities act became effective, resided in cities as a part of their police power. (*Murphy v. Chicago, Rock Island and Pacific Railway Co.* 247 Ill. 614; *People v. Grand Trunk Western Railway Co.* 232 id. 292; *Weage v. Chicago and Western Indiana Railroad Co.* 227 id. 421). The police power, however, does not inhere in municipal corporations but is an attribute of sovereignty which belongs to and emanates from the State. (*City of Chicago v. O'Connell,* 278 Ill. 591; *City of Chicago v. M. & M. Hotel Co.* 248 id. 264). This essential power of government may be withdrawn by the General Assembly from the agency which has been empowered to exercise it and may be retained or conferred upon some other governmental agency. (*Chicago North Shore and Milwaukee Railroad Co. v. City of Chicago,* 331 Ill. 360; *City of Chicago v. O'Connell, supra; City of Chicago v. M. & M. Hotel Co. supra*). The General Assembly, in its discretion, withdrew from cities the regulatory powers formerly exercised by them over the separation of grades at crossings of highways by railroads and delegated such powers, among others, to the Commerce Commission, an-

other agency of government. In the exercise of the police power to promote the public safety a wide discretion is necessarily vested in the legislature to determine what the public interests require and also what measures are necessary for the promotion and protection of those interests. *Northern Trust Co.* v. *Chicago Railways Co.* 318 Ill. 402; *Village of Atwood* v. *Cincinnati, Indianapolis and Western Railroad Co.* 316 id. 425; *Public Utilities Com.* v. *City of Quincy,* 290 id. 360; *City of Chicago* v. *O'Connell, supra; Illinois Central Railroad Co.* v. *Willenborg,* 117 Ill. 203.

The question whether the public safety requires the abolition of a grade crossing is one which may be left to an administrative body, such as the Commerce Commission, for its decision under the circumstances of the particular case, subject to review as provided by the Public Utilities act. (*Chicago, Burlington and Quincy Railroad Co.* v. *Cavanagh,* 278 Ill. 609; *Alton and Southern Railroad* v. *Vandalia Railroad Co.* 268 id. 68). The General Assembly, by section 58 of the Public Utilities act, vested the commission with power to determine the necessity of grade separations, the most feasible plans for accomplishing the elimination of grade crossings, and the proportions of the cost of such alterations and improvements to be borne by the parties concerned. The commission's jurisdiction over all phases of grade crossing regulation has been recognized as plenary and exclusive. (*City of Witt* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 324 Ill. 494; *Northern Trust Co.* v. *Chicago Railways Co.* 318 id. 402; *Village of Atwood* v. *Cincinnati, Indianapolis and Western Railroad Co.* 316 id. 425; *Commerce Com.* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 309 id. 165; *Stephens* v. *Chicago, Burlington and Quincy Railroad Co.* 303 id. 49; *Chicago, Milwaukee and St. Paul Railway Co.* v. *County of Lake,* 287 id. 337; *Chicago, Burlington and Quincy Railroad Co.* v. *Cavanagh,* 278 id. 609). Among the principal factors to be consid-

ered by the commission in a proceeding for the abolition of a grade crossing are the location of the crossing, the conditions surrounding it and the volume of traffic passing over the street or highway. *County of St. Clair* v. *Pennsylvania Railroad Co.* 342 Ill. 646; *Town of Sidney* v. *Wabash Railway Co.* 333 id. 126.

The legislature made the power to apportion the expense of eliminating a grade crossing inseparable from the power to determine whether the public safety requires the improvement to be made and to prescribe the manner in which it shall be constructed. The apportionment by the Commerce Commission of the cost of a grade separation is as much an exercise of the police power as the determination of the necessity for the change, and the direction of the type and method of construction. The elimination of a railroad crossing at grade calls for an adjustment of the diverse interests of the public, the carrier and any other party concerned. (*Erie Railroad Co.* v. *Board of Public Utility Comrs.* 254 U. S. 394; *Commerce Com.* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 309 Ill. 165). The proposed improvement for which a part of the cost has been apportioned to the appellant is largely for the benefit and protection of the general public which travels over Ninety-fifth street. The provisions of the statute authorize the Commerce Commission to apportion a part of the cost of a grade crossing elimination to the municipality in which the crossing is situated. *Commerce Com.* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 309 Ill. 165; *Chicago, Milwaukee and St. Paul Railway Co.* v. *County of Lake,* 287 id. 337.

The appellant argues, however, that the provision of the amended ordinance requiring the appellee and the New York, Chicago and St. Louis Railroad Company to defray the entire cost of the improvement does not involve the public safety, but pertains to private financial obligations between the parties to the contract and therefore does not

come within the scope of the subsequent exercise of the police power by the State. The ordinance upon its passage was in its nature a legislative act, even though, by the subsequent acceptances of its provisions by the railroad companies, it also became a contract. (*Murphy* v. *Chicago, Rock Island and Pacific Railway Co.* 247 Ill. 614). Contracts of the character of the ordinance under review are subject to modification by subsequent statutes enacted in the *bona fide* exercise of the police power to promote the public health, morals or safety or the general welfare, and do not, by reason of the contract clause of the Federal or State constitution, enjoy any immunity from such legislation. (*Chicago and Alton Railroad Co.* v. *Tranbarger,* 238 U. S. 67; *Northern Pacific Railway Co.* v. *Duluth,* 208 id. 583; *Manigault* v. *Springs,* 199 id. 473; *New York and New England Railroad Co.* v. *Bristol,* 151 id. 556; *Commerce Com.* v. *Omphghent Township,* 326 Ill. 65; *Public Utilities Com.* v. *City of Quincy,* 290 id. 360; *Hite* v. *Cincinnati, Indianapolis and Western Railroad Co.* 284 id. 297). Neither municipal franchise ordinances which have been accepted and acted upon by grantee utility companies, nor municipal regulatory ordinances passed under legislative authority, can stand in the way of the lawful exercise, by the Commerce Commission, of the regulatory police powers conferred upon it by the General Assembly. *Commerce Com.* v. *Omphghent Township, supra; Northern Trust Co.* v. *Chicago Railways Co.* 318 Ill. 402; *Village of Atwood* v. *Cincinnati, Indianapolis and Western Railroad Co.* 316 id. 425; *Hite* v. *Cincinnati, Indianapolis and Western Railroad Co. supra; City of Chicago* v. *O'Connell,* 278 Ill. 591.

When the Public Utilities act came into force on January 1, 1914, the power of the city over grade separations ceased to exist, and thereafter it could neither pass new nor enforce existing ordinances with reference to matters within the exclusive jurisdiction of the commission. As

the power to enforce proceeds from the existing power to enact, a city cannot be said to possess the power to enforce an ordinance concerning a subject within the police power of the State with respect to which the city has lost the power to pass the ordinance. (*Northern Trust Co.* v. *Chicago Railways Co. supra*). The power has not been conferred upon a city council in this State to establish by an inviolable contract the necessity for a separation of grades at the crossing of a street or highway by a railroad, the plan for the construction of an improvement to eliminate such a crossing, or the apportionment of the cost and expense attendant upon the execution of that plan so as to defeat the paramount governmental power with respect thereto. The provisions of the ordinance as amended which the appellant invokes are therefore subject to such regulations as thereafter may be made by the State in the lawful exercise of its police power.

The appellant further contends that the Commerce Commission's order is void for the want of evidence and findings of fact to support the reasonableness of its apportionment of cost. Section 65 of the Public Utilities act requires the commission, at the conclusion of a hearing upon any complaint, to make and render findings concerning the subject matter and facts inquired into and to enter its order based thereon. The requirement is mandatory that the findings of fact upon the principal issues be sufficiently specific to enable the court to review intelligently the commission's decision and to ascertain whether the facts on which the order is predicated afford a reasonable basis for it. (*Chicago and Eastern Illinois Railway Co.* v. *Commerce Com.* 341 Ill. 277; *Kewanee and Galva Railway Co.* v. *Commerce Com.* 340 id. 266; *Brotherhood of Locomotive Firemen and Enginemen* v. *New York Central Railroad Co.* 339 id. 201; *Central Northwest Business Men's Ass'n* v. *Commerce Com.* 337 id. 149; *Chicago Railways Co.* v. *Commerce Com.* 336 id. 51). In reviewing an or-

der of the commission, the court is limited to a consideration of the questions whether the commission acted within the scope of its authority, whether it made findings to support its decision, whether the findings and the decision have a substantial foundation in the evidence, and whether constitutional rights have been infringed by the decision. (*Moline Consumers Co.* v. *Commerce Com.* 353 Ill. 119; *Central Northwest Business Men's Ass'n* v. *Commerce Com. supra; Commerce Com.* v. *Chicago and Eastern Illinois Railway Co.* 332 Ill. 243; *Wabash, Chester and Western Railroad Co.* v. *Commerce Com.* 309 id. 412; *Public Utilities Com.* v. *Smith,* 298 id. 151; *Chicago, Milwaukee and St. Paul Railway Co.* v. *Public Utilities Com.* 268 id. 49). The act does not authorize this court to put itself in the place of the commission, to determine independently the issues presented, and to substitute its judgment for that of the commission. *Chicago North Shore and Milwaukee Railroad Co.* v. *Commerce Com.* 354 Ill. 58; *County of St. Clair* v. *Pennsylvania Railroad Co.* 342 id. 646; *Central Northwest Business Men's Ass'n* v. *Commerce Com. supra; Commerce Com.* v. *Omphghent Township,* 326 Ill. 65.

The uncontroverted evidence shows that Ninety-fifth street is a heavily-traveled thoroughfare and that an increase in the traffic thereon is reasonably assured. The estimated cost of the proposed improvement is approximately $300,000. It also appears from the evidence that, by the construction of the subway, definitely ascertainable benefits will accrue to the public, including the elimination of danger to life and damage to property, the avoidance of delays to traffic, and the increase in the number of vehicles which may pass over the street. The appellee also will derive benefits from the subway, such as exemption from liability for damages resulting from accidents at the present grade crossing, and the saving effected by eliminating the cost of protecting the crossing. Additional taxes

and the cost of maintaining the bridge structure, the appellee argues, may reduce the advantages so accruing to it. The summary of the evidence and the findings of fact are set forth with sufficient completeness and clarity to permit a review of the decision predicated on these findings, and the order of the commission is amply supported by the evidence.

The final contention of the appellant is that the order or judgment of the circuit court is void for the want of a finding that the evidence offered before the commission on the city's application for a rehearing would not be controlling. Section 68 of the Public Utilities act provides that appeals to a circuit court or the superior court of Cook county shall be according to the rules relating to the trial of chancery suits, so far as applicable. The section further provides that, if it appears that the commission failed to receive evidence properly proffered on a hearing or a rehearing, or an application therefor, the court shall remand the cause to the commission with instructions to receive the testimony so proffered and rejected, and to enter a new order based upon the evidence previously taken, and such new evidence as it is directed to receive. If, however, it shall appear that such new evidence would not be controlling, the court shall so find in its order.

The appellant filed its application for a rehearing for the purpose of presenting additional evidence alleged to be of such a nature as might lead the commission to alter the part of its order which apportioned the cost of the subway to be constructed. The additional evidence offered tended to show performance by the appellant of various provisions of the ordinance of April 5, 1911. The appellant concedes that it did not offer this evidence at any of the hearings before the commission. The evidence was available for presentation at these hearings if the appellant had deemed it relevant or material. The additional evidence was neither new nor properly offered; it did not meet the

514

requirements of section 68, and the circuit court was under no statutory duty to find that such evidence would not be controlling.

The order of the circuit court is affirmed.

*Order affirmed.*

FARTHING and SHAW, JJ., dissenting: It is our opinion that this case is controlled by the decision in *Missouri, Kansas and Texas Railroad Co.* v. *Oklahoma*, 271 U. S. 303, and that the order should be reversed.