THE CITY OF CHICAGO, Plaintiff-Appellee, *v.* ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellants.

First District (1st Division)   No. 78-1056

Opinion filed April 9, 1979.

William J. Scott, Attorney General, of Chicago (Hercules F. Bolos, Special Assistant Attorney General, and Mary C. Ubatuba, Assistant Attorney General, of counsel), for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale, Edmund Hatfield, and Bernard Rane, Assistant Corporation Counsel, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

The City of Chicago filed a complaint for declaratory judgment against the Illinois Commerce Commission and the commissioners thereof (defendants). The city raised the issue of legal validity of Rule 606 of General Order 138 promulgated by the commission. The theory of the complaint is that the defendants were without jurisdiction and lacked legal authority to require a municipality to maintain public utility

facilities. The trial court entered judgment for plaintiff. Defendants appeal.

General Order 138, Revised, consists of rules and regulations concerning crossings of railroads and highways in Illinois. It provides guidelines for their construction and maintenance. On May 19, 1971, the commission adopted a resolution for revising and updating this order. Hearings concerning the resolution were concluded on February 13, 1973. The hearings were attended by the city and other interested parties. The resolution, as revised, was adopted on August 22, 1973. Rule 606 incorporated therein provides:

> "On all overhead railroad structures having vertical clearance of less than 14′ 6″ clearance signs are to be furnished, installed, maintained and replaced by and at the expense of the public authority having the duty of maintaining the signs along the highway requiring such signs or as covered by agreement * * *. It shall be the duty of said public authority to determine the clearance to be indicated on said sign. Railroad companies may elect to do the actual work of installing, maintaining or replacing clearance signs."

The city did not apply to the commission for rehearing. The city did not appeal to the circuit court for administrative review. (See Ill. Rev. Stat. 1977, ch. 111 2/3, pars. 71 and 72.) Instead the city filed its complaint for declaratory judgment, as above described, on September 24, 1974.

In their brief in this court defendants contend the circuit court had no jurisdiction to consider the city's complaint because the city waived its right to judicial review of the commission's order; and that the commission had the authority to require the city to install and maintain clearance signs as described in Rule 606.

The city contends the rule as promulgated was void so that the city properly took its action directly to the circuit court instead of proceeding by administrative review. The city further contends the defendants were without jurisdiction to require local governments to perform acts designed to preserve and promote the safety of public utility operations.

It is undisputed that the city was a party to the proceedings before the commission which resulted in the promulgation of Rule 606 above quoted. Likewise it is clear that, as above shown, the city did not avail itself of the statutory machinery for judicial review of orders of the commission. The pertinent statute provides that, where no appeal is taken from the commission in such a situation, the parties affected by the order of the commission have waived the right to further review. The statute provides (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 72):

> "When no appeal is taken from a rule, regulation, order or

decision of the Commission, as herein provided, parties affected by such rule, regulation, order or decision, shall be deemed to have waived the right to have the merits of said controversy reviewed by a court and there shall be no trial of the merits of any controversy in which such rule, regulation, order or decision was made, by any court to which application may be made for a writ to enforce the same, or in any other judicial proceedings."

Predicated upon these arguments the commission urges it had complete jurisdiction for the entry of the order in question and the statutory provisions for review above quoted provide the exclusive method for judicial review. The commission therefore contends that it had jurisdiction over the parties and the subject matter so that the order in question was not void.

In effect, this argument is predicated upon the theory of exhaustion of remedies and takes the position that, since the city failed to exhaust its administrative remedies, the action of the city in the circuit court was tantamount to a collateral attack upon the commission's order. It is correct that the courts of this jurisdiction have held that the administrative remedy is complete and exclusive and that orders of the Commission are not open to collateral attack. See *Illini Coach Co. v. Illinois Commerce Com.* (1951), 408 Ill. 104, 110-12, 96 N.E.2d 518, and *Chicago North Shore & Milwaukee R.R. Co. v. City of Chicago* (1928), 331 Ill. 360, 374-75, 163 N.E. 141.

In our opinion, the result of several more recent decisions has been to liberalize these rules and, under certain designated circumstances, to permit an alternative remedy of court procedure in addition to the statutory provisions for administrative review. In *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 387 N.E.2d 258, the supreme court approved institution of an action for declaratory judgment after an administrative agency had acted and without the need of seeking judicial review of its decision. The supreme court pointed out the rationale for the doctrine of exhaustion of remedies and cited the various decisions which presently permit direct attack upon an administrative order without the necessity of seeking review under special circumstances delineated by the court. See *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 358, 326 N.E.2d 737, and authorities there cited; *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 548, 370 N.E.2d 223; *Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 552, 359 N.E.2d 113.

In *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 551, the supreme court used language which we regard as applicable to and decisive of this issue:

"We conclude that where an administrative body's assertion of jurisdiction is attacked on its face and in its entirety on the ground that it is not authorized by statute, exhaustion of administrative remedies and compliance with the Administrative Review Act is not required. Under these circumstances the judicial determination involves a question of law which will affect the jurisdiction of the administrative body in all cases and will hasten the administration of justice. The circuit court had jurisdiction to hear Landfill's declaratory judgment action."

It is true that none of the cases above cited are concerned with administrative review of decisions of the commission. But, the Administrative Review Act has a provision regarding appeals from administrative bodies subject thereto which closely parallels the corresponding portion of the Public Utilities Act. Compare Ill. Rev. Stat. 1977, ch. 111 2/3, par. 72, to ch. 110, par. 265. Note *Varnes v. Dougherty* (1976), 39 Ill. App. 3d 476, 478, 350 N.E.2d 6.

■■ We therefore hold that the trial court had legal authority to decide the issues raised in the city's complaint for declaratory judgment concerning the jurisdiction of the commission to enter its Rule 606 as above described.

Considering the merits of the situation before us, the commission points to a number of specific sections of the Public Utilities Act as granting the jurisdiction of the Commission to enter orders such as Rule 606. However, in our opinion it is unnecessary for this court to consider the details of the Public Utilities Act. The Act has repeatedly been construed and commented upon by the Supreme Court of Illinois. In *City of Chicago v. Illinois Commerce Com.* (1934), 356 Ill. 501, 507-08, 190 N.E. 896, the court set forth these propositions of law, all supported by citations:

(1) Prior to the enactment of the Public Utilities Act, the power to alter railroad crossings "resided in cities as a part of their police power."

(2) The police power is actually "an attribute of sovereignty which belongs to and emanates from the State."

(3) Therefore the General Assembly could confer this power upon a governmental agency other than the city.

(4) The General Assembly by the Public Utilities Act has withdrawn the power over railroad crossings from the cities and has delegated it to the Commerce Commission.

(5) The exercise of jurisdiction of the commission is "subject to review as provided by the Public Utilities Act."

(6) "The commission's jurisdiction over all phases of grade crossing regulation has been recognized as plenary and exclusive."

The court cited seven decisions of the supreme court as authority for the last stated proposition of law. Later decisions affirm and accentuate this proposition. In *Illinois Central R.R. Co. v. Franklin County* (1944), 387 Ill. 301, 309-10, 56 N.E.2d 775, the court held:

> "By the Public Utilities Act the commission was given plenary power over all questions relating to highway crossings over railroads and other equipment and appliances in the interest of the public safety."

In *City of Chicago v. Chicago & North Western Ry. Co.* (1954), 4 Ill. 2d 307, 312, 122 N.E.2d 553, the court held that when the Public Utilities Act came into effect, "the power of the city over grade separations ceased to exist, making the city incapable of passing new ordinances or of enforcing existing ordinances with reference to such matters which the act placed within the exclusive jurisdiction of the Commerce Commission." In *Merchants National Bank v. Elgin, Joliet, & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 125, 273 N.E.2d 809, the court noted that the Commerce Commisssion "exercises plenary and exclusive jurisdiction over all phases of grade crossing regulation * * *." Black's Law Dictionary 1313 (4th ed. 1951), defines plenary as "Full, entire, complete, absolute, perfect, unqualified."

■■ In our opinion these matters transcend and eliminate the need for this court to construe the Public Utilities Act or to weigh and consider specific portions of the Act in order to arrive at a proper definition of the jurisdiction of the Commission. We will, however, note one additional factor which is operative here. The commission's brief cites instances in which the commission has used its plenary and exclusive jurisdiction over railroad crossings to direct and order various governmental bodies (highway commissioners, townships, a road district) to do the work required in the interest of public safety. The brief asserts that this type of order has been issued by the commission and obeyed by the parties "for over two decades." This exercise of jurisdiction by the commission has never been halted or criticized by any court or by legislative action. "Substantial weight is accorded such long-standing interpretation of a statute by the administrative body charged with its application." *Radio Relay Corp. v. Illinois Commerce Com.* (1977), 69 Ill. 2d 95, 101, 370 N.E.2d 528, and cases there cited.

*Hermann v. City of Chicago* (1973), 16 Ill. App. 3d 696, 306 N.E.2d 516, does not assist the city. It did not involve a railroad crossing but had reference to the lower level of Wacker Drive in Chicago. The Commerce Commission is not involved in the case. Also, the decision in favor of the city rests upon contributory negligence by the plaintiff and the issue of governmental immunity for torts.

■ We hold that the commission had full legal authority to promulgate Rule 606 above set forth as part of its plenary and exclusive jurisdiction over railroad crossings.

As regards the apportionment of the entire cost of the improvement against the city, the city conceded in the trial court that the commission has the authority to apportion the cost between the city and the public utilities involved. In its brief in this court, the city did not question the authority of the commission to apportion costs but raised the point that the assessment of the entire cost against the city was unfair.

In our opinion, the law is clear that the commission has authority delegated to it by the State of Illinois to apportion the cost of repair or reconstruction of a railroad crossing, including the situation before us, when such work is necessary for the public safety. (*Chicago Junction Ry. Co. v. Illinois Commerce Com.* (1952), 412 Ill. 579, 586, 107 N.E.2d 758.) In *City of Chicago*, 356 Ill. 501, 509, the court held that the power of the commission to apportion the cost is not only an exercise of the police power but it is "inseparable" from the remaining powers granted to the commission by the statute. It follows that the legal authority of the commission to apportion the cost in the instant case is unassailable.

As regards the contention of the city that the apportionment in this case is unfair, it has been held that "[t]he amount of cost to be apportioned to the affected parties is a matter for the commission to determine from the evidence. If it is based on the evidence, it is lawful." (*Chicago Junction Ry. Co.*, 412 Ill. 579, 586.) In the case before us we do not have the record of the proceedings before the commission. We do not know the evidence upon which the commission based the apportionment of the cost. It follows necessarily that we are unable to pass upon that aspect of the order appealed from.

The judgment of the trial court is accordingly reversed and the cause is remanded with directions to dismiss the city's complaint for declaratory judgment with prejudice.

Judgment reversed and cause remanded with directions.

McGLOON and CAMPBELL, JJ., concur.